THE REAL ESTATE BANK *vs.* RAWDON ET AL.

Where a case is tried in the court below, without the intervention of a jury, upon a written statement of the facts, made out, and agreed upon by the parties, if the court below decides the law incorrectly, as arising on this—agreed facts, the decision will be corrected here on error.   The case stands precisely as if there had been a special verdict, finding the same facts, when the agreed case is incorporated in a bill of exceptions.

Any mode of payment by an agent, accepted and received by the other contracting party as an absolute payment, will discharge the principal, whether he be known or unknown, or whether it be in the usual course of business or not.

The question in cases of this sort, is not so much one of law, as one of fact:—whether the note is received as a conditional, or as an absolute payment; whether it is received with the knowledge that there is another principal; and whether there is an exclusive credit given to the agent.

If a creditor of the principal settles with the agent, and takes a note, or bond or obligation from the latter, for the amount due by the principal, although, as between the parties, it is intended only as a *conditional* payment, yet, if the creditor gives a receipt, as if the money were received, or the security an absolute payment, so that the agent is thereby enabled to settle, and does settle with his principal, as if the debt had been actually discharged, and the principal would be otherwise prejudiced, the debt will be deemed, as to the latter, absolutely discharged.

If the principal settle with the agent on the faith of a receipt in full, *as for money,* he is entirely discharged.

And so he is, if he settle on the faith of a receipt given thus, " Rec'd. payment as follows, from T. T. W. to wit: his note at six months, $7047 79 : ditto $7047 79 : cash $7047 79."   Such a receipt warrants the principal in settling with the agent.

No receipt is conclusive evidence of absolute payment.   A receipt "in full by cash" may be explained or contradicted, as well as a receipt in full by note.

The legal presumption arising from the fact of drawing a negotiable order, or making a negotiable note, which is received by the creditor, is, that it was intended to be, and in fact is, an extinguishment of the original demand or cause of action.   This presumption may be rebutted by the agreement of the parties, or proof of usage, or circumstances inconsistent with it.

The circumstances that will defeat such presumption, are such as would induce a court of equity to set aside the contract: as, mistake, fraud or surprise.   The proof of either of these, will defeat the effect of the receipt.   If given with a knowledge of the circumstances, and there is no mistake or surprise on the one part, or fraud or misrepresentation on the other, it will effectually defeat all *further* claim.

Giving a negotiable note for a prior debt of another, is such a payment as will support an action of assumpsit for money paid.

And if the party receiving the note, delays for a long time after it is due, to make any claim on the principal, this fortifies the presumption, and aids to show the receipt to be *prima facie* evidence of payment.

Whether a case can be re-considered on motion, in this court, after opinion delivered, judgment entered, and the term expired—*dub. per* PASCHAL, J.

But, on the whole, the question considered as one, not of power but of practice. *Id.*

This court has no power to open and reverse its own judgments, deliberately given, settled and recorded, at a previous term.   *Per* LACY J. and SEBASTIAN J.

No application for a re-hearing, after the term, should be considered, unless the court order the judgment to be suspended during the term when it is rendered, and while it is in fieri and under the control of the court.

The former decision of the court, as to all the points, affirmed.   *Per* SEBASTIAN J.

THIS was an action of assumpsit, tried in the Pulaski circuit court, at September term, 1841, before the Hon. JOHN J. CLENDENIN, one

The Real Estate Bank *vs.* Rawdon et al.

of the circuit judges. Rawdon, Wright and Hatch, engravers of New York, were the plaintiffs, and The Real Estate Bank, defendant. The case was tried before the court, without the intervention of a jury, and all the facts are presented by a single bill of exceptions; which was taken the day after the trial, time having been given, by consent, to file it, and which, commencing thus, "Be it remembered, that on the trial of this cause, the same being submitted by consent to the court sitting as a jury, and the following facts being in evidence," states the facts thus: In February, 1838, Thomas T. Williamson and Ambrose H. Sevier were appointed by the Bank commissioners to sell the bonds of the State belonging to the Bank, and were instructed by the President of the Bank, in case they sold the bonds, to procure the engraving in the eastern States, of the notes and bills of the Bank, and other engravings for the Bank; which instruction was contained in a letter of instructions, copied into the letter book of the Bank. In the summer of the same year, Williamson, in his character of such agent for the Bank, his character of agent being known to the plaintiffs, contracted with the plaintiffs for the engraving of the notes and bills for the Bank and its Branches, and certain other engravings therefor. The engravings so contracted for was done by the plaintiffs, and their bill for it, at the usual prices, amounted to $21,143 37-100, which was admitted by Williamson to be correct. Before the settlement of the account, Williamson paid them, in cash, $7047 79 and gave for the residue his two individual notes, each payable to them, dated October 6, 1838, each due at 6 months, and each for $7047 79 cents; which were received by the plaintiffs upon the settlement: the plaintiffs made out their account against the Bank, amounting to $21,143 37 cents; and receipted it thus—"Rec'd. payment as follows, from Thos. T. Williamson, viz: his note at 6 mos. $7047 49 —ditto $7049 79—cash $7049 79. New York, Oct. 6, 1838. *Rawdon, Wright & Hatch.*"

Upon the return of Williamson to Little Rock, he brought with him this receipted account, and in his account with the Bank, made and filed by him for himself and Sevier, for settlement, he charged the Bank with the sum of $21,143 37 cents, advanced for the Bank in New Hork, to the plaintiffs, and filed their receipted account in the

Bank, as a voucher in support of the charge.   Their account, and the account of the plaintiffs, were acted upon by the proper authority of the Bank, and a settlement made, on the 15th of December, 1838. Upon this settlement, it being found, that after crediting Williamson with the amount of his two notes to the plaintiffs, claimed by him as an advance made for the Bank, the balance in his favor was $11,731 13 cents, which was directed by the Bank to be paid over to Williamson, and was on the same day paid over accordingly.   Williamson was charged by the Bank, in this settlement, with $422 36, "interest on deferred payment to Rawdon, Wright & Hatch."   Williamson's notes were not before the Bank or finance committee, when the settlement was made.   The plaintiffs' receipted account was.   The Bank afterwards received all the engravings, and used them.

On the 6th of November, 1840, the plaintiffs' agents and attorneys, by letter, enclosing the account of the plaintiffs against the Bank, and Williamson's notes, demanded payment of the account from the Bank, and informed the Bank that if she agreed to settle the account, she could retain the notes, but otherwise must restore them.   On the 21st of December, 1840, the Bank returned the notes, and refused to pay the account.   Shortly before the suit was brought, (29th Jan. 1841,) Williamson learned that one of the attorneys had the notes, and called upon him, and attempted to arrange the notes, by an agreement to pay one-half out of his then next year's crop, and the other half out of the crop of the year thereafter.   The attorney responded that he did not consider himself authorized to make such an agreement; but there was a sort of general authority at the end of plaintiffs' letter, under which he would make the arrangement, if Williamsion would make him perfectly secure, by giving good security; which he did not do.

The notes of Williamson were not paid, when the case was tried' and were still in the attorneys' hands.   The Bank had then large claims against Williamson, sent her for collection, which she was unable to collect; and if she had been compelled to make the amount here sued for, out of Williamson, she would have had great difficulty in doing so.

After stating these facts, the bill of exceptions thus concludes:

The Real Estate Bank *vs.* Rawdon et al.

"which being all the evidence in the case, it was submitted to the court, upon this state of fact, to decide whether, upon the facts so proven and established, the Bank was or was not liable to the plaintiffs for the amount for which they had taken said Williamson's notes. Whereupon the court decided that the Bank was so liable, and rendered judgment in favor of the plaintiffs against the Bank, for the amount of said notes, with interest from the time when said notes fell due; being for the amount of the balance of their account and interest: To which opinion and decision of the court, so deciding the defendant to be liable, and so giving judgment against the defendant, the defendant excepted," &c., with the usual conclusion.

The Bank brought the case into this court by writ of error.

*Pike & Baldwin,* for plaintiff in error. Any mode of payment by an agent, accepted and received as such by the other contracting party, as an absolute payment, will discharge the principal, whether he be known or unknown, and whether it be in the usual course of business or not. The question in most cases of this sort, is not, generally, so much a question of law, as of fact: that is to say, whether the note is received as a *conditional* payment, or as an absolute payment; whether it is received with the knowledge that there is another principal or not; and whether there is an exclusive credit given to the agent or not. *Story on Agency* 440, 441.

If a creditor of the principal settles with the agent, and takes a note or other security from the latter for the amount due by the principal, although, as between the parties, it is intended only as a conditional payment, yet, if the creditor gives a receipt, as if the money were received, *or the security were an absolute payment,* so that the agent is thereby enabled to settle, and does settle, with the principal, as if the debt had been actually discharged, or the principal would otherwise be prejudiced, the debt will be deemed, as to the latter, absolutely discharged. *Story on Agency* 443, 444. *Reed vs. White,* 5 *Esp.* 122. *Wyatt vs. Marquis or Hertford,* 3 *East.* 147. *Schermerhorn vs. Loins,* 7 *J. R.* 311.

It is perfectly clear that if the principal settles with the agent, on

the faith of a receipt *in full*, as for money, he is entirely discharged. Does the form of the receipt in this case make any difference?

The receipt here is "*as if the security were an absolute payment.*" Rawdon, Wright & Hatch receipt for the notes *just precisely as they do for the money.* They knew the principal. There is no distinction between such a receipt and one *in full*, simply, if the principal settles on the faith of it. *Muldon vs. Whitlock,* 1 *Cowen* 304.

No doubt, taking a note for a pre-existing debt is not *conclusive* evidence of payment, unless it be expressly agreed to take as payment, and to run the risk of its being paid. *Toby vs. Barber,* 5 *J. R.* 68. *Arnold vs. Camp,* 12 *J. R.* 409.

But the question here is not, whether this receipt would be sufficient evidence of absolute payment, on a trial at law; but whether it warranted the Bank in settling with Williamson, and gave him a right to demand a settlement.

No receipt is conclusive. A receipt in full, simply, may be explained or contradicted by part testimony, as well as a receipt in full by note.

The legal presumption arising from the fact of drawing a negotiable order, or making a negotiable note, which is received by the creditor, is, that it was intended to be, and in fact is, an extinguishment of the original demand or cause of action. This presumption may be controlled or explained by the agreement of the parties, or proof of usages or circumstances inconsistent with such presumption. *Varner vs. Nobleborough,* 2 *Greenl.* 121.

Such circumstances only as would lead a court of equity to set aside a contract, (such as fraud, mistake or surprise,) can be shown at law to destroy the effect of a receipt. If given with a knowledge of the circumstances, and there is no mistake or surprise on one part, or fraud or imposition on the other, it will be effectual to defeat a further claim. *Fuller vs. Crittenden,* 9 *Conn.* 401.

Giving a negotiable note, for the prior debt of another, is such a payment of it, as will support against him an action of assumpsit for money paid. *Cornwall vs. Gould,* 4 *Pick.* 446. *Bartlay et al. vs. Gooch,* 2 *Esp.* 571. *Witherby vs. Mann,* 11 *J. R.* 518. *Douglas vs. Moody,* 9 *Mass.* 553.

The Real Estate Bank *vs.* Rawdon et al.

The plaintiffs below undertook, in effect, to loan Williamson $14,-000 belonging to the Bank. The first notice ever given to the Bank that they looked to her for payment, was given *eighteen months* after the notes fell due, and *two years* after they were executed.

That this was not due diligence, see *Dayton vs. Hull,* 23 *Wend.* 345.

And where a negotiable note has been given for a prior debt, the plaintiff cannot recover on the original consideration, unless he shows the note to have been lost, or produces and cancels it at the trial. *Hughes vs. Wheeler,* 8 *Cowen* 80. *Holmes & Drake vs. DeCamp,* 1 *J. R.* 34. *Angel vs. Felton,* 8 *J. R.* 149. *Pincard vs. Tacking,* 10 *J. R.* 105. *Bendick vs. Green,* 15 *J. R.* 247. *Raymond vs. Merchant,* 3 *Cowen* 150.

The receipt in this case was at least *prima facie* evidence of payment. 8 *Greenl.* 298. 6 *Mass.* 143. 7 *Mass.* 36. 11 *Mass.* 359. 11 *Mass.* 47. 4 *Mass.* 93. 4 *Pick.* 228. 8 *Pick.* 522. 10 *Pick.* 525. 12 *Pick.* 269.

*Ashley & Watkins,* contra. A promissory note is not a payment or extinguishment of the original indebtedness. A bill of exchange or promissory note either of the debtor or any other person, is not a payment of the precedent debt, unless it be so expressly agreed. *Greenwoods vs. Curtis,* 6 *Mass. Rep.* 388; 4 same 93. *Johnson vs. Johnson,* 11 *Mass. Rep.* 361. *Goodenow vs. Tyler,* 7 *Mass. Rep* 36. *Barnell vs. Brown,* 1 *McCord* 449. *Clark vs. Young,* 1 *Cranch* 181. *S. C. Cond. Rep.* 287. *Sheeby vs. Mandeville et al.* 6 *Cranch.* 253. *S. C.* 2 *Cond. Rep.* 363. *United States vs. Lyman,* 1 *Mason* 482. *Chitty on Bills p.* 200. *Chamberlain vs. Delaxire,* 2 *Wilson* 353. *Ward vs. Evans,* 2 *Ld. Raym.* 930. So if the creditor had passed away the bill or note, and it was outstanding in a third person's handss he could not maintain an action on the original consideration. *Binden vs. Halton,* 1 *Moore & P.* 223. 4 *Bingham* 454. *Kean vs. Dupeern,* 3 *Serg. & Rawle* 233. But if the defendant was the acceptor of the bill or maker of the note, then it suffices merely to produce the instrument on the trial in order to show that it is not outstanding in a third person's hands—*Hadwen vs. Mendigable,* 10 *Moore* 477. *S. C.* 2 *Car. & P.* 20, or proving it in his possession or control. And where

an agent buys goods for his principal and gives his own notes, they are considered, so far as the question whether they operate as payment is concerned, as the notes of the principal himself. *Porter vs. Talcott,* 1 *Cowen* 359. In England the taking of a bill or note in satisfaction of a former simple contract, debt, or of a simple contract debt created at the time, is at the most, but a suspension of the remedy (as against the acceptor or maker) and an extension of credit during the time the bill or note has to run. See *Kearslake vs. Morgan,* 5 *T. R.* 513. *Steadman vs. Gooch,* 1 *Esp.* 3. The taking of a bill or note in payment does not preclude the right of distraining for rent even before the bill or note becomes due. 3 *Price* 272. An express and clear agreement by the creditor to take a bill as payment at all events, and whether bound or not, would amount to the payment of the debt. *Brown vs. Kenley,* 2 *Bos. & Pul.* 518. But in the absence of such a stipulation, even a partner of the debtor unknown until the dishonor, may be sued. *Robinson vs. Wilkins,* 3 *Price* 538. The comparatively recent case of *Robinson vs. Reed,* 9 *Barn. & Cres.* 449, is a very strong one, and similar to the one now before the court.

In New York, where the transactions involved in this case took place, the law on this point is settled in numerous cases. *Raymond vs. Merchant,* 3 *Cowen* 147. *Porter vs. Talcott,* 1 *Cowen* 359. *Mulden vs. Whitlock,* 1 *Cowen* 290. *Smith & Rogers vs. Berment,* 17 *Johnson Rep.* 340. *Cumming vs. Hackley,* 8 *John. Rep.* 202. *Putnam vs. Lewis.* 8 *John. R.* 389. *Ren vs. Barber.* 3 *Con.* 272. *Tobey vs. Barber,* 8 *John. Rep.* 68. *Murray vs. Governour,* 2 *John. Cas.* 438. *Hening vs. Lange,* 2 *John. Cas.* 71. *Schemerhorn vs. Loines,* 7 *John. Rep.* 311. *Johnson vs. Weed,* 9 *John. Rep.* 310. And in Massachusetts, held in the case *Vancleef vs. Therasson,* 3 *Pickering* 12, that a negotiable note given for a demand, not being payment in N. York of a note made in that State, will not be considered payment in a suit in the courts of Massachusetts.

According to the authorities, the question whether the note was taken absolutely as payment or not, is a question of fact for the jury. *Anthon's Nisi Prius Cas.* 49. *United States vs. Lyman,* 1 *Mason* 482. *Story on Agency, p.* 441.

The taking of the note of an agent at an extended credit for goods

The Real Estate Bank vs. Rawdon et al.

furnished for the benefit of the principal, does not discharge the principal unless it is affirmatively shown on his part, that on the supposition that the debt was paid, or the personal responsibility of the agent accepted for it, he dealt differently with the agent than he would have done had the note not been taken and the extended credit given. *Rothbone vs. Tucker*, 15 *Wend*. 498.

Where a person is employed by an agent, he may call upon the principal, for payment for the services rendered; and he may do so, although he knows that the agent has charged the demand to the principal and received the amount, unless he agreed to discharge the principal and rely upon the responsibility of the agent. *Lincoln vs. Battles*, 6 *Wend*. 475. *Porter vs. Lalcats*, 1 *Con*. 350. The case of *Cheever vs. Smith*, 15 *John. Rep*. 276, would apply where an agent pays an account against his principal in money, and the creditor receipts the account in full, but by mistake the money actually paid by the agent falls short of the account, in such case the creditor, if he would recover the deficiency of the principal, must notify him of the mistake, otherwise, and if he settles with the agent, supposing the account to have been paid in full by the agent, the remedy of the creditors against the principal would be lost. No such state of facts exists in this case. The Bank, at and from the time she settled with Williamson knew how the account of the plaintiffs against her had been liquidated. See also, the case of *Muldon vs. Whitlock*, 1 *Cowen* 290, where the credit was given to the Ship's Husbands, who were part owners, and their note taken for stores at an extended credit of three months, giving a receipt for the note as in full for the stores; this note not being paid, and the Ship's Husbands, who gave the note, becoming insolvent, held that the other owners were not thereby discharged, but were liable in assumpsit for the original consideration. In this case the Ship's Husbands are to be regarded as agents for the owners of the vessel. See also, *Tempest vs. Ord*, 1 *Maddock* 89, as to the effect in general of a bill given by an agent. *Robinson vs. Read*, 9 *Barn. & Cres*. 449.

The doctrine laid down in *Story on Bills*, *p*. 443, that if the creditor gives a receipt, as if the *money were received*, or the security were *an absolute payment*, so that the agent is thereby enabled to settle,

and does settle with the principal as if the debt had been actually discharged and the principal would otherwise be prejudiced, the debt will be deemed, as to the latter, absolutely discharged, does not apply to this case; because, when the Bank settled with Williamson, she knew that he had only paid a part of the plaintiffs account against her. She paid him money in her own wrong, and before the time of credit extended to her by the plaintiffs had expired, and without any evidence before her that the plaintiffs had taken the notes of Williamson as an absolute payment, and the note immediately afterwards, *ib. p.* 444, stated by the author in illustration of the doctrine, that where work and labor was done for the principal, and the account was presented to his steward, who gave his own check on a banker for the amount; and thereupon the creditor gave a receipt *for the money* on account of the principal; and upon the dishonor of the check, the agent accepted a draft for the amount, payable on time; it was held that if the principal had in the mean time settled his account with the steward, or had dealt with him differently, in consequence of that receipt, so that he would be prejudiced thereby, the principal would be discharged, shows clearly that it cannot apply to a case like the one now before the court.

According to the authorities, the question whether the notes taken absolutely as payment or not, is a question of fact for the jury. *Anthon's Nisi Prius Cas. Copper vs. Power* 49. *United States vs. Lyman,* 1 *Mason* 482. *Story on Agency* 441. The court below in this case, sitting as a jury, by authority of law providing that as a mode of trial, where neither party requires a jury, *Rev. Stat. p.* 633, *sec.* 98, has passed upon this question of intention of fact, and found from the evidence or facts submitted, that the notes of Williamson were not received as an absolute payment of the account against the Bank, and we are at a loss to see how that as a question of fact can be enquired into in this court.

At July term, 1842, the opinion of the court was delivered by DICKINSON, J. The only question in this case is as to the plaintiffs' right to recover of the defendant upon the facts stated. As a question of practice may possibly be raised in this case, we will first examine and

The Real Estate Bank *vs.* Rawdon et al.

decide that point before passing to the consideration of the main enquiry raised by the record.

The facts were admitted upon the trial on an agreed case. The court was required to decide the law arising upon these facts. The case stands in the same situation as if there had been a special finding by a jury—the law of the case being referred to the court. The practice in such a case has been settled, as it has been expressly ruled in this court in the case of *Hanly and another, and Porter and another.* In that case there was a special finding by the jury. The court decided the law wrong upon the facts, and we reversed its decision because the judgment was erroneous. The object of the finding of the jury is to ascertain the truth of the facts, and when this is done, if the law is erroneously applied, it is the duty of the supervising tribunal to correct the error. We can see no possible distinction between facts established to be true by the special finding of a jury, or facts admitted to be true upon an agreed case of the parties themselves. If any conceivable distinction can exist, the truth of the facts must be more clear and conclusive in a case where they are admitted to be true by the parties themselves to the record, than in a case where they are only ascertained to be true by a special finding. In both, however, there can be no contrariety of opinion as to the truth of the facts. They are not a matter of dispute before the court or between the parties. The only question in litigation is as to the law of the case, and if the court decide this wrong, shall not the party, who excepts to that decision, have the benefit of it, if there be error in the judgment? To deny him this privilege involves the absurdity of sustaining the judgment of the court when the law of the whole case has been erroneously decided, and that too where an exception is regularly put in to the opinion. To require him in such case to ask for a new trial is to do a useless and unmeaning thing. It could not be to correct the facts of the case, for they are undeniably true and verified by the contract. It certainly could not be to correct the law in the case, because that had been just decided and the exception not abandoned. By moving for a new trial the party waives his exception. How then could he afterwards have the benefit of it. All he complains of is, that the law of the case has been incorrectly ad-

judged against him, and this is the point upon error he desires to correct. Our statute, by giving to the parties the privilege of waiving the trial by jury, puts both the law and the facts submitted to the court. And this court in inspecting the transcript, as there can be no doubt about the facts when they are put upon the record, will unquestionably reverse the judgment below, if the law of the case has been decided wrong.

This brings us to the second enquiry, which is, was the Bank upon the agreed case made liable for the amount of Williamson's notes? The doctrine in case of this kind is stated with great perspicuity and force by Justice STORY in his admirable treatise upon agency. In these cases, says that learned judge, any mode of payment by the agent, accepted and received by the other contracting party as an absolute payment, will discharge the principal, whether he be known or unknown, or whether it be in the usual course of business or not. The question in most cases of this sort, is not generally so much a question of law as of fact: That is to say, whether the note is received as a conditional payment or as an absolute payment. Whether it is received with the knowledge that there is another principal or not, and whether there is an exclusive credit given to the agent or not. *Story, Com. on Agency,* 440, 441. *Paley on Agency, by Lloyd,* 357. *Smith vs. Ferrand, B. & C.* 10. *Johnson vs. Weed,* 9 *J. R.* 310.

If a creditor of the principal settles with the agent and takes a note or bond, or obligation from the latter for the amount due by the principal, although as between the parties it is intended only as a conditional payment, yet if the creditor gives a receipt, as if the money were received, or the security an absolute payment, so that the agent is thereby enabled to settle and does settle with his principal, as if the debt has been actually discharged, and the principal would be otherwise prejudiced, the debt will be deemed as to the latter absolutely discharged. *Reed vs. White,* 1 *Esp.* 122. *Wyatt vs. Marquis of Hertford,* 3 *Esp.* 147. *Schemerhorn vs. Loomis,* 7 *J. R.* 311. It is perfectly clear that if the principal settles with the agent on the faith of a receipt in full as for money, he is entirely discharged. Does the form of the receipt vary the principle? The receipt here is as if

the security were an absolute payment for Rawdon, Wright & Hatch, receipted for the notes precisely as they receipted for the money. They released the principal and elected to take the agent's responsibility, and he, upon the faith of the receipt, settled with his principal, the Bank. No doubt, taking a note for a pre-existing debt is not conclusive evidence of payment, unless it is expressly agreed to be taken as payment, and at the risk of the creditor. *Toby vs. Barber,* 1 *J. R.* 68. *Arnold vs. Camp,* 12 *J. R.* 407. Did the receipt here warrant the Bank in settling with Williamson? It unquestionably did. No receipt is conclusive evidence of absolute payment. A receipt in full by cash may be explained or contradicted as well as a receipt in full by note. The legal presumption arising from the fact of drawing a negotiable order or making a negotiable note, which is received by the creditor, is that it was intended to be and in fact is an extinguishment of the original demand or cause of action. This presumption may be contradicted or explained by the agreement of the parties or proof of usage, as circumstances inconsistent with such inference. *Varner vs. Nobleborough,* 2 *Greenleaf* 121.

Now, the circumstances that defeat the presumption of such payment, are such as would induce a court of equity to set aside the contract. As, for instance, mistake, fraud or surprise. The proof of any of these things will defeat the effect of the receipt. If given with a knowledge of the circumstances, and there is no mistake or surprise upon the one part, or fraud or misrepresentation upon the other, it would effectually defeat all further claim. *Fuller vs. Crittenden,* 9 *Conn.* 401.

Giving a negotiable note for a prior debt of another is such a payment as will support an action of assumpsit for money paid. *Cornwall vs. Gould,* 4 *Pick.* 446. *Barday et al. vs. Gooch,* 2 *Esp.* 571. *Witherbee vs. Mann,* 11 *J. R.* 518. *Douglass vs. Moody,* 9 *Mass.* 553. The first notice that was ever given to the Bank that the plaintiff looked to her for payment of Williamson's note, was about eighteen months after they fell due, and two years after their execution, and a considerable length of time after the Bank had settled with Williamson upon the faith of the receipt and paid him over the balance due. This delay upon the part of the plaintiffs goes far to explain the true

nature and character of the receipt, and fortifies the legal presumption arising upon it, that it was *prima facie* evidence of an absolute payment: or, in any event, it was such a payment as the principal, after he had settled with the agent, had a right to consider as conclusive evidence of the creditor's demand. The receipt in this case is *prima facie* evidence of payment, and as the plaintiffs have failed to show any circumstances or facts overthrowing this presumption, it must stand as full proof of the fact, and therefore of the case. This position all the authorites support. 8 *Greenl.* 298. 6 *Mass.* 143. 7 *Mass.* 36. 11 *Mass.* 359. 10 *Mass.* 47. 4 *Mass.* 93. 4 *Pick.* 228. 8 *Pick.* 522. 10 *Pick.* 525. 12 *Pick.* 269. The judgment is therefore reversed with costs.

RINGO, C. J., *dissenting.* The case shown by the record, as I understand it, presents legally no question for the consideration of this court: because no exception was taken at the trial in respect to the testimony, or any opinion of the court receiving or excluding it, nor was the court called upon by either party to express any opinion as to the law arising thereupon in any point of view whatever, nor was there any motion made for a new trial. How then does the evidence become a part of the record in any manner authorizing this court to consider it for the purpose of revising the judgment based upon it? The court, according to my understanding of its opinion, regards it as a case agreed between the parties, considering the testimony embodied in the bill of exceptions as a statement of facts agreed upon by the parties, at or before the trial in the circuit court, and upon which alone the judgment of the court, as to the legal liability of the Bank to pay the demand of the plaintiff was required; but such conclusion is not, in my opinion, warranted by the record, because it not only fails to show any such agreement as to the facts, but shows affirmatively that no such agreement existed, and that the facts were established by testimony adduced in the ordinary mode, that is by the testimony of witnesses examined in court at the trial; and that the court upon such testimony adjudicated the case, and determined the issue joined between the parties. The facts, therefore, were before the court sitting, as the record states, as or in the place of a jury,

precisely as they would have been before the jury, if one had been required. I cannot, therefore, consider it as an agreed case, nor can any be so regarded, according to my understanding of the law, unless the parties at or previous to the trial, agree upon all the facts upon which they demand the judgment of the court, and state them upon the record; in which case there is nothing for a jury to determine, the whole matter to be decided being simply a question or matter of law, and then the case bears a striking analogy to the case of a demurrer to evidence, when the facts are admitted and their legal operation only is to be determined. But such, according to my understanding, was not the case here, because the court was bound not only to consider the law arising upon the testimony, but also to consider and determine upon the competency, the relevancy, and the weight of the testimony, as well as the credibility of the witnesses, and therefore its judgment as to the facts may have been influenced by considerations or circumstances, which cannot be made to appear to a revising court: such, for instance, as the credibility of a witness or witnesses, which might depend upon an almost infinite variety of circumstances; and therefore, the law has wisely left the determination of controverted facts to the tribunal where the witnesses appear and are examined, and will not suffer the finding or decision thereupon to be disturbed, unless the wrong done thereby is so manifest as to warrant the conclusion that it was induced by some improper motive or palpable misapprehension: and then it can, in my opinion, be set aside upon a motion for a new trial only; which, in this instance, was never made. Now can it be pretended that there was no controverted fact in this case to be determined by the court sitting as a jury? It seems to me that it cannot. Was it admitted that the plaintiffs took the notes of Williamson as a full payment, satisfaction, discharge or release of their demand against the Bank? Certainly not. Yet this was the most important question involved in the cause; and it was certainly a question of fact, which not being admitted, the Bank was bound to prove in evidence of her liability, which would be fixed by competent testimony establishing the agency of Williamson to make the contract for the Bank; the fact that he did make it in that character with the plaintiffs; that they performed the work; none of which

The Real Estate Bank *vs.* Rawdon et al.

was admitted, but all made to depend upon the testimony adduced on the trial; and the finding of the issues by the court first ascertained and determined these facts, and must have determined the fact also, that the plaintiffs did not receive the notes of Williamson in satisfaction or discharge of their demand against the Bank. And then, but not until then, the legal question as to the liability of the Bank to pay the demand of the plaintiffs arose, and if these facts had been found in the form of a special verdict, instead of being found generally as they have been in this case, there can be no doubt that the law thereupon would charge the Bank, and I cannot perceive how she can be in any better situation where the same facts are necessarily found by a general verdict, or, as in this case, by a general determination of the issue in favor of the plaintiffs. If the defendant below desired or designed to submit the questions of law alone to the court, she should have demurred to the evidence, or, when the testimony was closed on the part of the plaintiffs, have moved the court that the law thereupon was in favor of the defendant, or, in other words, to find the issue for the defendant, and in either way the legal sufficiency of the testimony to establish the right of the plaintiffs and the liability of the defendant, distinct from all questions of fact, could have been presented and submitted to this court. But I am not aware of any other legal mode by which it could be done in the attitude in which this case was presented in and before the circuit cout; and therefore, as neither mode was adopted, the legal question as to the liability of the Bank, upon the testimony adduced at the time, is not, in my opinion, presented by the record in such manner as to authorize this court to adjudicate it; and therefore, inasmuch as there was no exception to the admission or exclusion of testimony on the trial; no agreement of record as to the facts, either at or before the trial; no demurrer to the evidence, or motion as to the sufficiency thereof to maintain and support the issue on the part of the plaintiffs; and no motion for a new trial, it appears to me clearly, that there is no error in the judgment and proceedings of the circuit court, as shown by the record, for which this court is warranted by law to reverse and set them aside. Besides, I know of no rule, of practice, or principle of law, authorizing an exception to be taken or made in the form of a bill of exceptions

The Real Estate Bank *vs.* Rawdon et al.

to the verdict of the jury, or finding of the court upon issues submitted to it by consent of parties, nor to the final judgment of the court pronounced in the cause; and I have not been able to find in any book an adjudicated case, or a single precedent where such practice has ever been admitted or allowed; nor has any rule of practice or principle of law authorizing such exception, been shown by counsel or referred to by the court. I therefore regard the practice, as adopted in this case, and sanctioned by the opinion of a majority of the judges of this court, as not only new and unprecedented, but as wholly unauthorized by law; and, therefore, I am of the opinion that the judgment of the circuit court in this case given, ought to be affirmed with costs.

At the same term at which that opinion was delivered, and after LACY, J. had left the bench for the term, the counsel for the defendants in error moved the court "for a re-hearing or re-argument, for reasons to be hereafter filed."

On the first day of January, 1843, they filed a petition for a rehearing, DICKINSON, J., having in the mean time ceased to be judge, by expiration of his term of service, and PASCHAL, J., being on the bench in his stead.

*Pike & Baldwin,* for plaintiffs in error, insisted that the court had no power to open the case, and set aside its judgment, especially after a change of judges; and cited, as in point, *Hudson et al. vs. Guestier,* 4 *Cranch* 293. *Martin vs. Hunter, Lessee,* 1 *Wheat.* 355. *People vs. Maryor and Ald. of N. York,* 25 *Wend.* 254.

The case was re-opened at January term, 1843, by PASCHAL, J., who said: The opinion of this court was delivered in this case by the majority of the court, and a dissentient opinion by the Chief Justice, twelve months ago. The defendants in error at the same time interposed a motion and petition for reconsideration. Under the practice of the court that motion has been taken under advisement, until the present term. The organization of the court having since that time

undergone a change, and my associates disagreeing, it devolved to me to determine whether or not the court would hear a re-argument, and again deliver its opinion either affirming or disaffirming the previous decision.

The practice of considering a case on motion, after an opinion has been delivered, judgment in accordance therewith rendered, and the erm expired, I have ever regarded, to say the least of it, of doubtful utility.  Indeed when first elevated to the bench, I was disposed to regard the question as one of power and not within the discretion of the court, after the expiration of the term at which an opinion may have been delivered and judgment signed.  I was disposed to think that when a decision has been made and judgment rendered, and the term closed, that the party prevailing had a right to the benefit of the record, in order to take further steps in the court below, and that neither the court nor the parties had a right to control the record for the purpose of reversing that judgment or re-hearing the cause.  Such has been, in effect, decided by this court in regard to the circuit courts.  See *Walker et al. vs. Jefferson, ante.*

In New York, motions for reconsideration in their appellate tribunals are regarded with jealousy, and it is said by their chancellor that no such motion has been made in the King's bench of England, for two hundred years.

But my brother judges have not been disposed to regard this as a question of power, but merely one of practice, and that, although such power should only be exercised in doubtful cases, or where the court may have erred, yet that the court may withhold the record from the court below, by taking the case under advisement upon proper petition, still retaining the power to re-hear and re-adjudicate the cause. And accordingly at the late term of this court a case was reconsidered, the previous judgment reversed and a different one rendered. *Pirani vs. Barden, ante.*  Having acquiesced in that opinion, and not wishing to reverse any well established practice of this court, I feel constrained to yield my own notions of the law and practice to the superior judgment and experience of my older associates.

In the present aspect of this case, no less important in principle than it is of magnitude to the parties, I have no opportunity of ex-

The Real Estate Bank *vs.* Rawdon et al.

pressing my opinion, upon any of the points involved in the case, except by ordering a re-hearing. For, if I understand the practice of the court, should my opinion be against the petitioners, it would be out of place to give my reasons on overruling their motion, and if for them, it would be equally improper, because the prevailing party has had no opportunity to answer the argument of the petitioners.

I must here be permitted to say, that I regard the practice as latitudinous, and tending to useless delay; and that taking such motions under advisement until a succeeding term, is an exercise of doubtful power. And if such a practice is to be continued, it certainly ought to be circumscribed within narrow limits.

Desirous, therefore, of fully considering the whole merits of the case, I shall decide to reconsider the cause in order that counsel may have an opportunity of furnishing all their authorities to the court. Let the previous judgment therefore be set aside, and the case set for re-hearing.

And the case thus again standing for argument, *Pike & Baldwin* for plaintiff in error, cited, as to the question of practice, *Graham's Prac.* 331. 8 *Cowen* 682, 694. *Parsons vs. Armor*, 3 *Peters* 413. *United States vs. Eliason*, 16 *Peters* 291.

And on the main question, *Andrews vs. Bobinson*, 3 *Camp.* 199. *Note to Borisfield vs. Cresswell*, 2 *Camp.* 546. *Bridges vs. Berry*, 3 *Taunt.* 130, *Southwick vs. Sax*, 9 *Wend.* 122. *Raymond vs. Merchant*, 3 *Cowen* 150. *Holmes vs. DeCamp.* 1 *J. R.* 36.

*Ashley & Watkins*, contra, cited; To the first point, *Lyon vs. Evans*, 1 *Ark.* 359. *Elmore vs. Grymes et al*, 1 *Peters* 472. *Lenox vs. Pike*, 2 *Ark.* 14. *Vernon vs. Young*, *Litt. Sel. Cas.* 353. *Logan vs. Dorriphan*, 2 *J. J. Marsh.* 253. 7 *Mon.* 454. *Hanly et al. vs. Porter*, 3 *Ark.* 18. *Hanna vs. Harter*, 2 *id.* 392. *Trowbridge et al. vs. Sanger*, 4 *id.* 179. *Robins' heirs vs. Danley*, 3 *id.* 144.

And as to the second point, *Cox & Dick vs. U. States*, 6 *Peters* 172. *Descadillus vs. Harris*, 8 *Greenl.* 298. *Reed vs. White*, 1 *Esp.* 122. *Hyatt vs. Marquis of Hertford*, 3 *Esp.* 131. *Schemerhorn vs. Jones*, 7 *J. R.* 311. *Johnson vs. Weed*, 9 *J. R.* 310. *Cromwell vs. Gould*,

4 *Pick.* 446.   *Barday vs. Gooch,* 2 *Esp.* 571.   *Witherby vs. Mann,* 11 *J. R.* 518.   *Douglas vs. Moody,* 9 *Mass.* 553.   *Cummins vs. Hack-ley,* 8 *J. R.* 202.   *Whitcomb vs. Williams,* 4 *Pick.* 231.   2 *Greenl.* 298.   6 *Mass.* 143.   7 *id.* 36.   11 *id.* 359.   10 *id.* 47.   4 *id.* 93. 4 *Pick.* 228.   8 *id.* 522.   10 *id.* 525.   12 *id.* 269.   *Mulden vs. Whitcomb,* 1 *Cowen* 304.   *Hughes vs. Wheeler,* 8 *Cowen* 77.   *Olcott vs. Rathbone,* 5 *Wend.* 490.   *Hawley vs. Foote,* 19 *Wend.* 516.   *Fris-bie et al. vs. Sarned et al.* 21 *Wend.* 450.   *Cole vs. Sackett,* 1 *Hill* 515.   *Rathbone et al. vs. Tucker et al.* 15 *Wend.* 498.

And, at July term, 1844, PASCHAL J. having resigned, and being succeeded by SEBASTIAN, J., the final opinion of a majority of the court was delivered by SEBASTIAN J.   A question of importance as to the practice of the court presents itself at the very threshold of the examination—a question as to the power and expediency of open-ing and reversing its judgments rendered at a previous term, after they have been deliberately settled and recorded, according to the rules and practice of the court.   Upon reason, principle, and the necessity of the case, it seems clear that no such power or right exists.   This conclusion is drawn from the familiar principle that the judgments of every court of competent jurisdiction are final and conclusive, unless reviewed and reversed by some court of appellate power.   That such judgments should be final and irrevocable arises from the full faith and credit which the law accords to them, and from the necessity that litigation should have an end, and men's rights find quiet and security under the inviolability of judicial sanction.   The law will not, there-fore, permit a court to review and reverse its own decisions, after the matter has gone beyond its control.   This is wisely left to the superior tribunals.   If a court can revise and correct or reverse its own judg-ments, to which shall we pay respect, the first or the last judgment? Each is entitled to the same respect as emanating from equal power; and if that which is last in point of time is highest in authority, itself may be superseded by one still later, and its supremacy thus destroyed. The difficulty lies in fixing the limits of its exercise if the power is con-ceded.   If it can be done once, it may be done again.   If the first judg-ment is not conclusive and final, neither can the second or any other be

The Real Estate Bank *vs.* Rawdon et al.

beyond the reach of the revising power, and if it can be done at the next term, it can be done also at any succeeding term. If the power is lodged in this court, inferior tribunals may claim the same privilege. There is no revising power over the proceedings of this court, and the power of the court at one term to change or annul its judgments rendered at a preceding term is inconsistent with the idea of supreme judicial authority or a court of last resort. The true limits of such a power is the term at which the judgment was rendered. With that ceases the power of the court over its proceedings, and its records become inviolable memorials of truth. This principle has been heretofore applied by this court to the proceedings of inferior courts in *Smith vs. Dudley*, 2 *Ark. Rep.* 66, and in a case decided at the last term of this court. This question has also received a full discussion and examination in *The People of New York vs. The Mayor and Aldermen of the city of New York*, 25 *Wendell* 252, in which the power was settled as here stated: and the practice in that court has been in accordance with that principle. In that case the subject was ably examined, many precedents cited, and the power of the court to reverse its own decisions not only denied, but its exercise questioned upon its expediency. In England the same rule is well settled in the House of Lords, and, it is said, has been acted upon for a century and a half. The same principles appear to prevail in the supreme court of the United States. In *Martin vs. Hunter's Lessee,* 1 *Wheat.* Mr. Justice STORY, in delivering the opinion of the court, said a final judgment of the court was conclusive upon the rights which it decided, and that no statute had provided any process, by which the court could revise its own judgments. And until some legislative provision shall be made for such review, we are not authorized, upon any principle of law, thus to interfere. Upon both principle and authority the question would seem to be settled.

But even if such a power existed, the policy of exercising it is questionable; as it would in course of time inevitably lead to great abuses. Apart from the want of confidence in the stability and uniformity of decisions, which it engenders, it is calculated to encourage applications for a re-hearing in view of a change of sentiment upon the bench from the periodical change of its members. If this ques-

73

tion had ever received a deliberate examination in this court, followed by a decision in favor of the power, it should be respected as a binding exposition of our legitimate powers. No such adjudication has ever been made; and, the practice of entertaining motions for rehearing after the term has expired in which a final judgment has been rendered, has silently and without opposition grown up. We will nos attempt now to give our views any retroactive operation, so as to disturb decisions which have heretofore been made. This would be exercising over a decision at a former term the very power which we have here denied. For the purpose of disposing of this cause we are willing to regard the order authorizing this cause to be re-heard as suspending the operation of the judgment, and as a refusal to let the transcript of the judgment be taken out. This view seemed to have been adopted when this cause was opened for re-hearing. We express these views here, that the opinion of the court as to its just powers may not hereafter be misunderstood. We must, therefore, in future, regard the decision of any case as final at the term when made and recorded, unless for the correction of mere form or clerical mistake, and that no application for a re-hearing after the term should be considered, unless the court order the judgment to be suspended during the term when it is rendered, and while it is *in fieri*, and under the control of the court.

The view which we have here taken, renders it necessary to say something of the main questions arising in the cause. In reviewing a judgment of this court, rendered at a previous term, and which was deliberately made upon a review of the whole case, we should not feel authorized to disturb such decision from any slight dissatisfaction with it, or because we might possibly come to a different conclusion. We have given the questions arising upon the record an attentive consideration, and see no reason to differ with the main conclusion upon the merits of the case. The first impressions were against the power of the court to review the case, upon a writ of error, when no new trial had been moved for. This question has, however, been conclusively settled in the supreme court of the United States in *Parsons vs. Armor et al.* 3 *Peters* 413, where the principle was extended even farther than in this case, and the revising power of the court exercised over

The Real Estate Bank *vs.* Rawdon et al.

both the law and the testimony at large in the case. We certainly cannot review upon a writ of error the finding of a jury, unless in some way connected with an erroneous judgment of the court. The judgments of the court below may be reviewed and corrected for errors connected with the verdict in some shape, as in the admission or rejection of evidence or instructions given to the jury, or a refusal to set a aside the verdict. Hence a bill of exceptions cannot be taken to the verdict of the jury, but only to some opinion or act of the court, and were such the case here, the question would present no difficulty. There is an obvious difference however, in considering the verdict of the jury, and the judgment of the court sitting as a jury. The one is the finding of facts under the instructions of the court; the other the result of both law and fact, so mingled as not to be reached in the ordinary mode. No question is made as to the evidence; no instructions given; no motion for a new trial, or for misdirection of the judge. The combined result of any errors which may have been committed, are presented in the judgment of the court. This finding of law and fact is then reached and reviewed *together; and to present these properly* before the court is the office of the bill of exceptions in the case. The case was, therefore, properly presented before the court, and upon the merits no sufficient cause is seen to change the opinion.

RINGO, C. J., *dissenting.* This case has been before this court for several years. When it was first adjudicated, at the July term, 1842, the majority of the court considering the testimony adduced on the trial of the circut court, the issue having been submitted to the court without the intervention of a jury, as legally and properly presented so as to demand the judgment of this court thereon in regard to the questions of fact involved in the issue, as well as the legal questions necessarily arising thereupon and decided by the circuit court, notwithstanding no question had been made by either party as to the admissibility or legal effect of the testimony, nor any opinion expressed by the court as to the legal rights of the parties established thereby or demanded by either party, nor any exception taken to any opinion or proceeding of the court pending the trial, nor until final judgment therein had been pronounced. And so, regarding the case, and con-

sidering the testimony as shown by a paper purporting to be a bill of exceptions to the opinion and final judgment of the court, as showing a case agreed or one in its character equivalent thereto, held *that* the testimony failed to establish such facts as, in law, would fix upon the bank a liability to the plaintiffs below for the demand in question, reversed the judgment of the circuit court, and remanded the cause for further proceedings to be there had consistent with law, and not inconsistent with said opinion. From this opinion I then dissented, and subsequently filed my opinion in writing, setting forth the ground and reasons of my dissent. At the same term, that is, at the July term, 1842, a few days after this judgment was pronounced, and before any transcript thereof had been obtained by either party, which, by our practice, supplies the place of a formal mandate, the defendants in error moved the court to reconsider this opinion and judgment. The court entertained this motion, and thereupon entered an order expressly granting to the defendants in error, time until the first day of the next term, to file their argument or petition in writing, setting forth, according to the rules and practice of the court, the ground of the motion, and the reasons upon which they solicited a reconsideration and rehearing of the cause, and then continued the case until the next term. The defendants in error complied strictly with the terms of the order by filing their argument or petition in writing on the first day of the next term, during which the cause was thereupon submitted to the court, and taken and held by the court under advisement until its July term, 1843. At its July term, 1843, the court sustained the motion, set aside the opinion and judgment pronounced at the July term, 1842, and ordered the cause to be reconsidered, reheard, and readjudicated; and it was again, during the same term, at the special adjourned session thereof, in October, 1843, submitted to the court with additional arguments and briefs, and taken, continued and held by the court under advisement until the present term, (July term 1844,) when, by the opinion of the court, verbally pronounced *on the 9th day of August*, 1844, it was held that this court, since the close of the July term, 1842, possessed no power whatever over the case to adjudicate it: and that all the proceedings therein, subsequently thereto are null and must be set aside or disregarded, and the judgment pro-

nounced therein at the July term, 1842, be therefore considered the final judgment of this court in the cause, and, as such, be enforced. When this opinion was pronounced, I dissented thereform. But the court, two days after, without any application of either party, set aside this adjudication, delivered its opinion in writing and again pronounced its judgment, reversing the judgment of the circuit court, and remanding the case for further proceedings, &c. The principles asserted by the court in the opinion now expressed, according to my understanding, are essentially, if not identically the same asserted at the July term, 1842, and at this term when the first opinion was delivered, together with some others now for the first time directly or incidentally stated and adjudged. The court, according to my understanding of its opinion deciding that its power over a case in which final judgment is pronounced, ceases and is forever determined at the close of the term in which said judgment is pronounced, in all cases in which such judgment is not, during the term in which it is pronounced, expressly and absolutely annulled, set aside and recalled; and that the court cannot, by any act, suspend its judgment once pronounced and not so recalled and set aside, so as to retain power over it and set it aside at a subsequent term. If this principle is not adjudged, I know not what principle the court intend in this particular to assert. If it is, it seems to me to be unsound, or, at least, inaccurately stated. As a general rule it is certainly true that the power of a court of common law over its judgments ceases and is forever determined when the term in which they are pronounced is closed. But during the term, the court, according to the practice in this State, and most if not all of the States in this Union, has been uniformly considered as possessing the power to recall or set aside and vacate its most solemn judgments: the proceeding for this period being considered *in fieri,* or within the breast of the judge. and subject to the control of the court. This I conceive to be not in strict accordance with the principles of the common law, or the practice in the courts of England; but it is, to this extent at least, so essentially a matter of practice, subject to the control of every court not in this respect restricted by constitutional or statute laws, that in the absence of such restraint, there can be no legal objection to its exercise, and according to my understanding of

its opinion, the court concedes this power to all the courts of this country. Here there was no order at the July term, 1842, expressly and in terms vacating, recalling or setting aside the judgment then pronounced, which is, in form, final; and if the act of the court entertaining the motion for a reconsideration, granting thereupon time to file the argument in writing required by its rules of practice, and ordering the case to be continued until the next term, had not in law the effect of suspending the judgment, it became of course, at the close of that term, conclusive as well upon the court as the parties. But being, as I conceive, purely a question of power, its authority must have been retained, and continued plenary in the court after the close of that term, or have become entirely extinct upon its close: it is a question as to which there can be no middle ground. If the power of this court over the case ceased, when the term closed, in which its original or first judgment was given, and it surely did if the principle asserted by the court be correct, then its solemn judgment at the July term, 1843, by which the former judgment purports to have been set aside, and that by which the case now purports to be finally determined, are mere nullities, noxiously incumbering the judicial records of the court. If it did not so cease, the judgment of the present term, as to this question, must overrule not only the uniform practice of the court from its first organization, but also its own solemn determination as to the same point made in this case at July term, 1843, and furthermore make void the whole proceeding at the last and present terms in a case between *Ashley* and *Hyde* and *Goodrich*, in which a reconsideration was granted, notwithstanding no written argument was filed until the second term after the motion therefore was made, and the former judgment was never suspended by any express order, and the first judgment set aside, and one entirely different pronounced, the latter affirming the judgment of the circuit court, which had been reversed by the first judgment pronounced in the case by the court. This appears to me to be a much stronger case, and one to which the principle, here declared, applies more forcibly than it does to the one now under consideration. But, if the principle adjudged be as I suppose it is, and have stated it, there can be but little doubt that all of the proceedings in both cases subsequent to

the term in which the first judgment was given in them respectively, must, if suchbe the true rule of law, be considered absolutely void.

But notwithstanding this question, according to the view taken of it by the court, must be purely a question of power to be determined upon a consideration of the fact as to whether the court did or did not set aside its own judgment at the term in which it was rendered; yet, regardless of this principle, the court appears to treat it, in regard to its application to this case, as a mere question of expediency, and not of power, by declining to give to it any retro-active operation; or, in this case, any operation whatever, or at most the force only of a newly established or discretionary rule, thus limiting its operation in a manner which appears to me to be, not only directly opposed to the principle asserted, but wholly unauthorized by law. In any view of the subject, the question, as I conceive, must depend upon the legal consideration or effect of the acts of the court, at the time in which the first judgment was pronounced. If they in law are such as suspend the judgment, it has none of the legal properties of a judgment, so long as it remains suspended, and cannot conclude any right either of the parties or of the court. It remains during such period *in fieri*, or in the breast of the court, and, in law, amounts to nothing more than a judicial intimation of the opinion *then* entertained by the court, but which is subject to be changed, if upon more mature consideration of the subject, it shall be found to be, in any respect, erroneous. And such I understand to be the legal effect and operation of a motion for a reconsideration properly filed, according to the rules and practice of the court, and entertained and continued, and not disposed of by the court. It is in fact one method adopted by the court of withholding or temporarily recalling and setting aside a judgment previously pronounced at the same term, until the court shall be more fully advised, what judgment the law denounces upon the premises. But from the time the motion is overruled, and the court refuses to rehear the cause, the judgment previously pronounced becomes operative as a judgment, and concludes the parties in respect to their rights thereby determined, and the court, with the close of the term, is divested by law of its authority to re-adjudicate the case, as to any right determined by its previous adjudication thereof. This principle, ac-

cording to my view of the subject, is fully sustained by the Supreme Court of the United States, wherein the case *Matheson's admr. vs. Grant's admr.*, 2 *How. Rep.* 263, that court sustained the judgment of the circuit court, where, on affidavits filed, it set aside its order made two terms previously arresting the judgment, and thereupon so amended the general verdict returned before the arrest of judgment, as to apply it to one count only of a declaration containing two counts incompatible in law with each other. The plaintiff by one demanding the thing in controversy, as administrator, as by the other, as of his own personal right, for which misjoinder of causes of action the judgment had been arrested; and upon the verdict so amended, entered up final judgment for the plaintiff as administrator, on the count alleging the demand in that right. In principle I consider this a much stronger case against the power of the court, than the case just determined by this court. Yet I regard the principle involved in both asstrictly an alogous, and, in each class of cases, as well sustaining the authority exercised by the court. I therefore consider this case as legally pending in this court for adjudication, and all orders made and judgments given in the same, subsequently to the first judgment pronounced therein, as valid, and in point of authority fully warranted by law.

The court, also, according to my understanding of its opinion, announces its intention to restrict its own action in future, in regard to all applications for reconsideration to the term in which the application is made. This rule, unless subjected to many exceptions, appears to me exceedingly objectionable, because in practice it not unfrequently happens, that cases of the greatest magnitude and difficulty are determed at or very near the close of the term, and in some instances the decision is based upon principles not discussed at the bar, which the parties had not previously conceived to be involved in the litigation. In such cases, and many others, I consider it but simple justice that the parties desiring it should be allowed an opportunity to show, if they can, that the court, in its opinion and judgment, has misconceived either the facts or the law, or misapplied the latter to the former; and such indulgence cannot, as I conceive, in the slightest degree diminish the public confidence in the tribunal or its determinations, but, on the contrary, must tend greatly to inspire and confirm it. For certainly,

few things are better calculated to shake and destroy the public confidence in a tribunal of the first grade and last resort, than an impression, however unfounded, that it is not inclined to hear any temperate and respectful argument against, or even criticism upon its public acts, and especially when they are designed to procure the correction of errors, which the party conceives the court to have fallen into, either to the prejudice of his rights or the claims of public justice; or disposed to act definitively upon any matter without investigating it fully, and receiving and deliberately and maturely considering every circumstance and argument, by which the right determination of the matter may be influenced. Such, I am sure, is not the design of the court in adopting this rule, yet its rigid observance would, I am convinced, produce such consequences. I conceive, therefore, that upon every consideration of the subject, the rule, as it has hitherto existed and been practiced upon in this court, is not only highly expedient, but, in every just view of the subject, greatly conducive to the better administration of public justice; is entirely consistent with the spirit of the laws of the land and the genius of our political institutions, and the high respect due to the court; and if properly observed and discreetly carried into practice by the court, is well calculated to preserve harmony and consistency in its decisions, to satisfy the just expectations of the parties litigant and increase the public confidence in the tribunal. Consequently, I am opposed to the change indicated by the court. Besides which, the establishment of the rule in this case, in the determination of which it is not allowed to have any influence whatever, appears to me to be gratuitous; if not altogether objectionable; inasmuch as the previous practice is expressly sanctioned by the 13th rule of practice, adopted by the court shortly after its organization. And if it is the intention to abrogate or even modify this rule, it would, according to my view of the subject, be more appropriately done by acting directly upon the rule, and expressly rescinding or changing it.

Passing from the consideration of this rule of practice, the court, according to my understanding of its opinion, proceeds to draw a distinction in regard to the rules of practice established by law, between cases submitted to a jury and those decided by the court without the

intervention of a jury: and determines that in the former, no exception to the verdict can be taken and reserved by bill of exceptions, so as to bring the facts adduced in testimony before the appellate court for its consideration, with a view to any revision of the verdict predicated thereon. But that in the latter, the facts may, by bill of exceptions to the opinion or determination of the issue by the court, be legally made parcel of the record of the cause, and that, in such case, this court is bound to consider and review the facts and revise the opinion and decision of the court thereon; which is but asserting more distinctly the principle upon which the court proceeded in its opinion previously delivered in this case at the July term, 1842; basing it now upon the supposed authority of certain adjudged cases not noticed in the former opinion. From that opinion I then felt constrained to dissent, and I now refer to my dissenting opinion then delivered, as showing substantially the grounds and reasons of my dissent to this part of the opinion now delivered. And in addition thereto I think proper to state my understanding of the principle upon which the Supreme Court of the United States proceeded in its disposition of the case of *Parsons vs. Armor & Oakley*, 3 *Pet. R.* 413, cited by the court as establishing the rule in this particular adjudged in this case.

The case last cited was brought before the Supreme Court by writ of error from the District Court of Louisiana District, exercising circuit court jurisdiction. It was a suit prosecuted in the district court, according to its practice, in the forms of the civil law, in which judgment was rendered by the court, the parties having waived the trial by jury. The record consisted of the petition, the answer, the whole testimony, as well depositions as documents, introduced by either party, and the fiat of the judge, that Armor, the plaintiff below, recover the debt as demanded. So much of the opinion of the Supreme Court, as in any manner relates to the principle of law or rule of practice now in discussion, is expressed in the following language: "In the argument counsel considered the cause as in nature of a case stated, that is, a substitute for a special verdict, but this court could not avoid noticing that the precedent might involve it in the necessity of exercising jurisdiction over cases of a very different character. This writ of error does not bring up a mere statement of facts, but a mass of testimony, and however

The Real Estate Bank *vs.* Rawdon et al.

consistent and reconcilable the testimony may be in this case, it may be very different in future cases coming up from the same quarter, and by means of the same process." "The difficulty is to decide under what character we shall consider the present reference to the revising power of this court. If treated strictly as a writ of error, it is certainly not an attribute of that writ, according to common law doctrine, to submit the testimony as well as the law of the case to the revision of this court; and then there is no mode in which we could treat the case, but in the nature of a bill of exceptions; that is, to confine ourselves entirely to the question, whether, giving the utmost force to the testimony in favor of the party in possession of the judgment below, he was legally entitled to a judgment. But this would often lead this court to decide upon a case widely different from that acted upon in the court below. There may be conflicting testimony and questions of credibility in the cause, which this court would be compelled to pass by. This would be increasing appellate jurisdiction on principles very different from the received opinions and judicial habits of that State; and, it has been argued, equally inconsistent with the rights extended to them by Congress." "We feel no difficulty from the bearing of the seventh amendment of the constitution in this case; because, if this be a suit at common law in the sense of the amendment, the object was to secure a right to the individual, and that right has been tendered to him and declined. The words of the amendment are "the right to the trial by jury shall be preserved." Nor are we at liberty to treat this as *an appeal* in a case of equity jurisdiction under the act of 1803; because the party has not brought up his cause by appeal, but by writ of error." "The present case is one which may be treated as a bill of exceptions, or a case submitted. Since, giving the utmost force to the testimony in favor of Armor, we are of opinion that the judgment must be reversed. We shall proceed therefore to examine the merits upon that principle, without committing ourselves either upon the extent of the appellate power of this court over that of Louisiana, or the appropriate means of exercising it."

To my understanding it appears manifest, upon even the most superficial reading of this opinion, that, so far from establishing the principle or rule, which it cited by the court to sustain, its existence is

most clearly and explicitly denied throughout the opinion.   The language conveying the idea that the court, in such cases, cannot advert to or consider the testimony in the case for the purpose of revising the conclusions of fact deduced therefrom, whether found by the court or jury; that is, whether ascertained and determined by the opinion or judgment of the court or the verdict of a jury, appears to me to pervade every part of it, and set forth the principle so perspicuously and unequivocally as to exclude all doubt, and admit of no interpretation different or to the contrary.   But if there ever could have been enterlined any reasonable doubt as to this being the true understanding of the opinion of the Supreme Court in the cases last cited, it seems to be placed beyond all doubt or controversy by the subsequent decisions of the same court.

In the case of *Hyde & Gleises vs. Booraem & Co.*, 16 *Pet,* R. 169, brought before the Supreme Court by writ of error from the circuit court of the Eastern District of Louisiana, the proceedings in which conformed to the Louisiana practice, and the case was decided by the court without the intervention of a jury by the consent of the parties and the record, in addition to a statement of the facts, on which the judge relied in making his decision, stated by him at the request of the defendant's counsel, contained "at large the whole evidence at the hearing. "The court, in its opinion, says: "One of the embarrassments attendant upon the examination of this cause in this court, is from the manner in which the proceedings were had in the court below.   We have no authority, as an appellate court, upon a writ of error to revise the evidence in the court below, in order to ascertain whether the judge rightly interpreted the evidence or drew right conclusions from it.   That is the proper province of the jury, or of the judge himself if the trial by jury is waived and it is submitted to his personal decision.   We can only re-examine the law, so far as he has pronounced it, upon a statement of the facts, and not merely a statement of the evidence of facts, found in the record in the nature of a special verdict on an agreed case.   If either party in the court below is dissatisfied with the ruling of the judge in a matter of law, that ruling should be brought before this court by an appropriate exception in the nature of a bill of exceptions, and should not be mixed up with his supposed

conclusions in matters of fact. Unless this is done, it will be found extremely difficult for this court to maintain any appellate jurisdiction in mixed cases in the nature of the present. The same embarrassments occurred in the case of *Parsons vs. Armor*, 3 *Peters* 413, and was there rather avoided by the pressure of circumstances, than overcome by the decision of the court. Taking this case, then, as that was taken, to be one where there is no conflict of evidence and all the facts are admitted to stand on the record, without any controversy as to their force and bearing, in the nature of a statement of facts, and looking to the allegations and prayer of the petition, and the facts stated by the judge, the question which we are to dispose of is, whether, in point of law, upon these facts, the judgment can be maintained. We are of opinion that it cannot be, and shall now proceed to assign our reasons." In both these cases, the court, in its opinion as quoted, after stating the common law rule on the subject to be as I have stated, proceeds to consider the facts as properly appearing in the record, and as being uncontroverted or admitted to be the facts upon which the legal rights of the parties depended, instead of the testimony establishing or tending to establish such facts; and so regarding them, determined that the facts did not in law warrant the judgment pronounced upon them: and if such was the case here, the judgment of the court would in this respect be proper. But there is this marked and palpable difference between the cases—that is, that the testimony establishing the facts, upon which the legal right of the parties depends, is not in this case legally made of record so as to enable the court to revise the determination of fact based upon it, while the facts found by the court below from the testimony, in determining the issues of fact joined by the parties, do in law well warrant and fully authorize the judgment pronounced upon them; and the revision made by this court is therefore a revision of the facts found by the court below from the testimony before it, instead of being, as it was in the cases cited above, a revision of its judgment of the law upon the facts legally ascertained and determined, upon which the legal rights of the parties depend; and therefore this court proceeded in this case upon a principle exactly the opposite of that proceeded upon by the supreme court of the United States in the cases cited. In

which the proceedings in the inferior court were throughout had, and conducted according to the rules of practice prescribed by the civil code of Louisiana, according to which the testimony adduced on the trial, on the demand of either party, must be reduced to writing by the clerk, whereupon, without any exception taken in point of law to any opinion of the court, it is regarded as entering into and composing a part of the record of the cause, and therefore the appellate court, in revising the adjudication, is bound to consider it: and this was, manifestly, the view taken of it by the supreme court in these cases; and yet, although it was legitimately a part of the record brought before that court by the writ of error, and was so considered by the court, still it uniformly not only refused to assume the power to revise any determination of fact made in or by the inferior court, but expressly denied its authority so to do. Notwithstanding which, this court cites these cases, and relies upon them as establishing the principle that the appellate court, acting in a case prosecuted throughout according to the forms of practice, and governed by the rules of proceeding and principles of the common law, may legally regard the testimony adduced on the trial, and set out in a paper purporting to be a bill of exceptions to the determination of the issue by the court, or the final judgment of the case founded thereon, as legally constituting part of the record of the case, when the facts are determined by the court without the intervention of a jury; but not so, where a jury intervenes and decides as to the facts involved in the issue; and that in the former it can legally revise the judgment of the court as to its finding of the facts from the testimony, as well as its judgment of law upon the facts so found; and it is in this particular that I consider the rule asserted and acted upon in this case by the court, as violating every rule of the common law, and introducing a practice hitherto unknown, without precedent, and expressly and explicitly rejected by the supreme court in the very case cited as establishing it.

In the case of *Parsons vs. Bedford et al.* 3 *Pet. R.* 433, brought before the supreme court by writ of error, from the district court of the United States for the eastern district of Louisiana, the defendant below on the trial moved the court to direct the clerk to take down in writing the testimony of the witnesses examined by the respective

The Real Estate Bank *vs.* Rawdon et al.

parties, in order that the same might appear of record; such being the practice of the several courts of the State of Louisiana, according to the constitution and laws thereof, and such being the rule of practice in the opinion of the counsel for defendant, to be pursued in the district court of the United States, according to the act of Congress of 26th May, 1824. But the clerk refused, &c., and the court refused to order the clerk to write down the same, or to permit the witnesses themselves, the counsel for either of the parties, or any other person to write down such testimony, the court expressing the opinion that the court of the United States is not governed by the practice of the courts of the State of Louisiana. In respect to the testimony in question no charge or advice whatever was given or asked from the court to the jury or any matter of law or fact in the case, nor was any question raised as to the competency or admissibility of such evidence in any way affecting the question now in discussion. These facts were shown by a bill of exceptions taken upon the court's refusal to require the clerk to reduce the testimony to writing, &c., in which the testimony was not contained.

In regard to this question, the court, considering as to the law arising upon said exception, says "Generally speaking, matters of practice in inferior courts do not constitute subjects upon which error can be assigned in the appellate court. And unless it shall appear that this court, if the omitted evidence had been before it on the record, would have been entitled to review that evidence, and might, if upon such review it had deemed the conclusion of the jury erroneous, have reversed the judgment and directed a new trial in the court below, there is no ground upon which the present writ of error can be sustained." "It was competent for the original defendant to have raised any points of law growing out of the evidence at the trial by a proper application to the court, and to have brought any error of the court in its instruction or refusal, by a bill of exceptions, before this court for revision. Nothing of this kind was done or proposed. No bill of exceptions was tendered to the court and no points of law are brought under review. The whole object therefore, of the application to record the evidence, so far at least as this court can take cognizance of it, was to present the evidence here in order to estab-

lish the error of the verdict in matters of fact. Could such matters be properly cognizable in this court upon the present writ of error? It is very certain that they could not upon any suit and proceedings in any court of the United States sitting in any other State in the Union than Louisiana."

After considering the authority and rules of proceeding prescribed by the constitution and laws to the courts of the United States, and particularly the act of 1824, the opinion concludes thus, "The terms of the present act may well be satisfied by limiting its operation to modes of practice and proceeding in the court below, without changing the effect or conclusiveness of the verdict of the jury upon the facts litigated at the trial. Nor is there any inconvenience from this construction: for the party has still his remedy by bill of exceptions, to bring the facts in review before the appellate court, so far as those facts bear upon any question of law arising at the trial; and if there be any mistake of the facts, the court below is competent to redress it by granting a new trial." "Our opinion being that if the evidence were now before us, it would not be competent for this court to reverse the judgment for any error in the verdict of the jury at the trial the refusal to allow that evidence to be entered on the record is not matter of record for which the judgment can be reversed."

These cases appear to me to settle beyond controversy the question, that the appellate court, adjudicating according to the principles of the common law on a writ of error, possesses no revising power whatever over the facts established by the verdict of a jury, and cannot consider the testimoney for the purpose of correcting, directly, such finding. The same principle is asserted in the case of *Brockett et al. vs. Brockett*, 2 *Howard Rep.* 238.

And in a subsequent case, the same court decides expressly that it has no more right to revise the facts found by the court, where they have been submitted to the court without the intervention of a jury, than it has when they are found by a jury, and that in either case objections thereto must be taken in the same manner precisely; that is, by exceptions properly taken and reserved to the competency or admissibility of the testimony, to some advice or instruction of the court given or refused, or, according to our practice, to the opinion of

The Real Estate Bank *vs.* Rawdon et al.

the court granting or refusing a new trial. If there could have been, previously, any doubt as to the true understanding of these adjudications and the opinion of the supreme court as to the governing principle and true rule in such cases as the present, it must, as it seems to me, be entirely dispelled since the decision of the case last alluded to, that is, the case of *Minor and wife vs. Tillotson*, 2 *Howard R.* 392, decided by the supreme court at its last term. This is also a case brought before the supreme court by writ of error to the circuit court for the eastern district of Louisiana. It was a suit for the recovery of the possession of certain lands, and for damages, &c. The defendant set up title to the premises, and pleaded prescription under the laws of Louisiana. The cause was submitted to the court, under an agreement between the counsel, that "the documents filed in the cause, the plans, and written depositions contain all evidence and exhibits, on which this cause was tried by the court: the whole was read subject to all legal exceptions, except as to the form of taking the verbal testimony; and all other objection to the testimony, accounts and plans are to be argued as though the bills of exceptions were drawn in form, signed and filed. The agreement is made for a statement of the facts in the case." "A large mass of evidence was received from both parties, consisting of concessions and grants under the Spanish government, intermediate conveyances, documents showing proceedings in regard to the title under the laws of the United States and parol testimony, involving a great variety of facts, on a consideration of all of which a judgment was rendered by the circuit court for the defendant."

In its opinion in this case, the supreme court says, that "from the record it is impossible for this court to say on what grounds of law or fact the circuit court gave judgment. No point as to the admissibility or effect of the evidence was raised on the record by the plaintiffs in error in the circuit court. It seems to have been supposed that the above agreement of the counsel, that the evidence in the cause should be considered as a statement of facts, subject to all legal objections, though no objections were stated, was sufficient ground for a writ of error in which a revision of the legal questions in the case might be made in this court." "In this view the writ of error must be con-

sidered as bringing all the facts before this court, as they stood before the circuit court. And this court exercising a revisory jurisdiction, would be required to try the cause on its merits. *This is never done on a writ of error, which issues according to the course of the common law.* Under the Louisiana system a different practice may prevail. *But we had supposed that since the decision of the case of Parsons vs. Bedford et al. 3 Peters 445, there could be no misapprehension in regard to the proceedings of this court on a writ of error.* In that case, the court say, "it was competent for the original defendant to have raised any points of law growing out of the evidence on the trial, by a proper application to the court; and to have brought any errors of the court in its instruction or refusal, by a bill of exceptions, before this court for revision. Nothing of this kind was done or proposed. No bill of exceptions was tendered to the court, and no points of law are brought under review." And the court go on to consider the effect of the act of 1824, in regard to the Louisiana practice, and hold that the law does not change the exercise of the appellate power of this court." "The case referred to had been tried by a jury, but in regard to the revisory power of this court, on a writ of error, there is no material difference between that case, and the one under consideration. In both cases the facts were upon the record, and this court were called upon to determine the questions of law arising upon the facts."

In the case of Parsons the court do say *"that if the evidence were before them, it would not be competent for the court to reverse the judgment for any error in the verdict of the jury."* And they say, *"the* refusal of the court to direct the evidence to be entered on the record, as required under the Louisiana practice, was not matter of error."

"Whatever opinion, therefore, may have been entertained in regard to the effect of the act of 1824, on the practice of the circuit court of the United States in Louisiana, before the above decision, after it, there would seem to be no ground for doubt. The practice of the circuit court in Louisiana, since the above case was decided, has been conformed to the rule laid down in that case. *But in the present cause, there is no statement of agreed facts. If the case be revised on a writ of error, the evidence on both sides must be considered*

*and weighed by the court, as a jury would consider and weigh it: and after adjusting the balance, the principles of law, not as they were presented to the circuit court, but as they may arise on the evidence, must be determined. This is not the province of a court of error, but of a court of chancery on an appeal from the decree of an inferior court. On such a review, not only the competency of the evidence must be decided, but also the credibility of the witnesses.*" "The case under consideration was a proceeding at law, and, as the legal points have not been raised by a bill of exceptions in the circuit court, it is not a case for revision in this court."

I have quoted thus largely from these opinions, because in my opinion they not only confirm to the full extent every principle and rule of practice applicable to the present case, precisely as I have stated them and urged their enforcement therein, but express the true rule more aptly, explicitly and authoritatively, than I otherwise should or probably could have done. And also, because I am well convinced that the principles and practice asserted in this case by the court, must, if adhered to, inevitably involve this court in inconceivable perplexity, and force it into the exercise of a jurisdiction not conferred upon it by the constitution and laws, alike prejudicial to public justice and private rights.

I am, therefore, after a most careful and deliberate review of the whole subject, well satisfied that the judgment pronounced by the circuit court in this case ought to be affirmed.

Judgment reversed.