STUART *v.* BARRON.

Opinion delivered May 2, 1921.

1. EQUITY—VACATION DECREE AGAINST INFANT.—Under Crawford & Moses' Digest, § 2190, providing that a chancellor, by consent of parties or of their. solicitors of record, "may try causes and deliver opinions, and make and sign decrees in vacation," a chancellor may try an action and render a decree in vacation by the consent of all the parties, even though some of them are infants.

2. APPEAL AND ERROR—DECREE ON FORMER APPEAL AS LAW OF THE CASE.—Where a testator left all of his property, consisting of improved farm lands, of timber lands, and of personal property, to his wife in trust for his children, but directed how the farm lands should be distributed among his children, and plaintiff's children brought suit for a distribution of the timber lands and personalty, and treated the trust as finally accomplished with repect to the farm lands already distributed, and asked that they be given an equal division in the remainder of the property, and the Supreme Court decreed to them the relief asked, such decree in effect established as the law of the case that the remainder of the property was to be equally · divided and differences in value of the several tracts of farm lands were not to be equalized.

3. APPEAL AND ERROR.—Though appellees' counsel, under a misconception of this court's former opinion, consented to an instruction to the master to make a finding as to the relative values of improved farm lands, this did not bar appellees from objecting to a decree awarding payment of owelty, where no prejudice to appellants resulted from the concession during the progress of the proceeding.

4. APPEAL AND ERROR—FINAL JUDGMENT.—A decree of the chancellor merely declaring the law with respect to the rights of the parties, without awarding any particular property to the parties, was not a final judgment.

5. ATTORNEY AND CLIENT—AMOUNT OF FEES.—The trial court, in fixing the amount of the fees of attorneys for infants, properly considered the amount of the recovery; and where that amount was reduced on appeal, the cause will be reversed with directions to the chancellor to fix proper fees.

Appeal from Greene Chancery Court; *Archer Wheatley,* Chancellor; reversed.

*J. F. Gautney,* for appellants.

1. The decree of April 7, 1919, is void for want of jurisdiction. 81 Ark. 440-462. Where a complaint shows

no cause of action and tenders no issue, a judgment thereon is a nullity, no matter how attacked. 62 *Id.* 439; 9 Lea (Tenn.) 68; 21 L. R. A. (N. S.) 481. It is void even on collateral attack. 11 L. R. A. (N. S.) 803; 5 A. L. R. 262. No partition or sale of lands, etc., devised by last will can be made contrary to the intention of the testator expressed in his last will. C. & M. Dig., § 8090. See, also, opinion on former appeal. 136 Ark. 481. That decision is the law of the case. The court had no jurisdiction, and the decree is void. 15 R. C. L., § 328, p. 885. The decree undertaking to adjudge that all the real estate of J. W. Stuart at the time of his death was the common property of the widow and children is clearly without the issue and is void even on collateral attack.

It was error to cancel the deeds executed by the widow conveying the improved lands. The decision on former appeal is the law of this case. 136 Ark. 481.

2. The final decree is void because it was rendered in vacation. 224 S. W. 488. There is no evidence of an agreement to try the case in vacation and it being disputed that the decree was rendered in vacation it should be set aside.

3. The chancellor erred in refusing to reopen the decree on motion of appellants. It was an abuse of discretion and reversible error. 21 Ark. 329; 77 *Id.* 216. Unless specially authorized, an attorney can not compromise a client's case. 93 Ark. 342; 32 *Id.* 346; 56 *Id.* 355; 12 Heisk. 155.

It was error to refuse to allow the claims of the widow for $1,600, as the evidence shows it was lawful and just; also in refusing to find that the widow was the owner of the certificates of deposit in the joint names of Stuart and his wife at the time of Stuart's death.

*W. W. Bandy,* also for appellants.

*Self & Patton, Block & Kirsch* and *Huddleston, Fuhr & Futrell,* for appellees.

Parties can not treat an issue as joined by the pleadings, and, after trying the case on the issue joined, can not raise the issue in this court for the first time on appeal. 227 S. W. 390, 402; 227 *Id.* 407.

The decree of April 7, 1919, was a final decree and fixed the interest of all the parties and is conclusive of this case. 81 Ark. 454; Bliss on Code Pl., § 161.

By appearing and submitting the questions on their merits appellants will be held to have consented to try the issues in vacation and they are bound. 85 N. W. 783; 55 So. Rep. 711; 110 N. W. 984; 9 Neb. 269; 69 Atl. 546; 99 Ill. 609; 61 Vt. 147; 76 Pac. 584.

There was no error in allowing the fees of counsel; they were reasonable and well earned and not excessive.

McCULLOCH, C. J. This case is here now on a second appeal, the attitude of the parties being reversed, the present appellees having been the appellants on the former appeal, and the present appellants having been formerly the appellees. *Barron* v. *Stuart,* 136 Ark. 481. The facts in the case were stated more in detail in the opinion on the former appeal than need be stated again. Reference is made to that opinion, and it is only essential now to give an outline of the facts.

J. W. Stuart, a man sixty-eight years of age, residing in Greene County, Arkansas, died on July 28, 1916, the owner of a large estate consisting of improved farm lands, timber lands and personalty of various kinds. He left surviving him his widow, five sons, two daughters and the children of three deceased daughters, and a few days before he died he executed his last will and testament by which on the face of the instrument he devised and bequeathed all of his property to his wife, M. R. E. Stuart. Appellees, who are the daughters and grandchildren of J. W. Stuart, instituted this action to establish a trust in certain property devised and bequeathed to the widow. The chancellor in the first decree decided that there was no trust under the will and dismissed the complaint for want of equity. On the former appeal this

court sustained the trust and reversed the cause for further proceedings.

In the original complaint it was alleged that the testator, J. W. Stuart, had directed a division of the property, giving to the widow the homestead and $10,000 in money and certain other items of personalty, and that the remainder was to go to his children and grandchildren, and that he devised and bequeathed the whole of his estate to his wife as trustee, with instructions to convey to each of the children and grandchildren, separately, a tract of improved land, which he described by name or location, and to divide the timber land and personal property equally between all the children and grandchildren; that the widow after the death of the testator had carried out said directions by conveying the improved farm lands to the parties in accordance with the directions of the testator, but that she had refused to deed to her daughters and grandchildren any of the timber lands or to divide the personal property equally between the children and grandchildren as directed. The prayer of the complaint was that a trust be declared, and that the widow be compelled to carry out its terms by an equal division of the timber lands and the personal property among all the children and grandchildren, according to the directions of the testator. On the remand of the case, the plaintiffs, the present appellees, filed a supplemental complaint in which they set forth certain defects in the deeds executed to them by the widow conveying the improved farm lands and asked that a correction be made by the cancellation of those deeds, and the execution of new deeds by the commissioner of the court conveying the property to the plaintiffs in fee simple. It was also alleged in the supplemental complaint that the widow and one of the sons of the testator, J. A. Stuart, had cut and moved a large quantity of timber from the wild lands and had sold a large quantity of the stock and matured crops of the testator, and had disposed of other personal property, and asked that a master be appointed with power to state an account between the parties in regard

to their respective interests in the property. There was
also a prayer for a partition of the timber lands. There
was an answer to this supplemental complaint and also
a cross-complaint by the widow in which she claimed the
sum of $1,600 as her separate estate, in addition to the
sum of $10,000 which was specified was to go to her
under the trust.

On April 7, 1919, the court entered a decree on the
mandate of this court and the supplemental pleadings, in
which the court recited a finding "that the real estate
belonging to J. W. Stuart at the time of his death is the
common property of his widow, grandchildren and great
grandchildren (naming them)," and that it would be nec-
essary to have an appraisement and partition in kind of
all the lands belonging to the said testator, and the court
appointed commissioners to set aside the homestead to
the widow and to appraise each of the forty-acre tracts
of land separately and divide the same into ten equal
parts. The court also appointed a master to take testi-
mony and to report a statement of the account between
the parties. It appears from the account subsequently
filed that the widow, prior to that time, had divided the
cattle and mules and horses by giving to each of the chil-
dren and grandchildren a mule or a horse and a cow and
calf, and out of the cash on hand she had given to each
of them a check for $2,000 except two of her daughters
who joined in this suit against her. Testimony was taken
before the master, who made a report to the court set-
ting forth in detail his findings concerning the amount
of property in the hands of the executor, J. A. Stuart,
and the amount of disbursements. The commissioners
also made a report of the values of the tracts of wild tim-
ber lands and reported a partition of those lands equally
among the children and grandchildren, giving to the
grandchildren the share of the parent. There were no
exceptions to the report of the commissioners, nor is
there any controversy here concerning the division of the
wild lands. There were twenty-one separate tracts of
wild lands, containing forty acres each, and these tracts

were equally divided between the parties. Exceptions
were filed to the master's report, and these exceptions
came on for hearing by the court on April 5, 1920. There
was an order entered by the court reciting the filing of
the exceptions and the submission of the cause, which was
to be argued at a later time to be fixed by the chancellor.
The cause was heard by the chancellor in vacation, all
the parties being present by their attorneys, on July 15,
1920, and a final decree was rendered, the entry of which
contained a recital of the submission of the cause during
the term time on April 5. Certain matters were reserved
from the decree entered on July 15, and the hearing was
resumed on July 20, 1920. This was a final decree, except
that there was a motion made on August 21, 1920, to
reopen the decree, which motion the court overruled on
September 25, 1920.

On July 13, 1920, the attorneys then representing
the parties (not including the present counsel represent-
ing appellants here who have succeeded former counsel
in the case) joined in a written direction to the master,
as follows:

"We hereby request that, in stating the final account
for order of distribution in the case of *Barron* v. *Stuart,*
that you take into account the difference in value of the
so-called improved farms, the disposition of which were
directed by J. W. Stuart on his death-bed, and absorb
these differences in the final account, the value to be fixed
as found by the commissioners, as under the decree of the
Supreme Court all parties are to share equally by doing
this, no liens will be retained against the respective tracts
of lands on account of these differences and owelty
awards." It will be observed that this direction was
given after the first decree on July 15, 1920, and pur-
suant to this direction the master reported the values
of the improved farms conveyed to the different children
and grandchildren, and in stating the account between the
parties he equalized these differences so as to give each
of the children an equal share in the whole estate. The
court entered a decree in accordance with the report of

the master, awarding to each of the children and grand-children the amounts found to be the balance due to each of them out of the funds in the hands of the executor.

It is contended, in the first place, that the decree is void on account of being entered in vacation without having been previously submitted and taken under advisement by the court in term time. Conceding that the recitals of the record are not sufficient to bring the case within that feature of the statute (Crawford & Moses Digest, § 2190) which provides that the chancellor may "make and sign decrees in vacation in causes taken under advisement by him at a term of the court," the record does show that the cause was heard in vacation by consent of the parties, all being present by attorneys before the chancellor. The statute just referred to expressly authorizes the trial and rendition of decrees in vacation by consent. Some of the plaintiffs were infants, but there is no exception in the statute as to infant parties. The statute provides that the parties themselves, or their solicitors of record, may consent to the hearing in vacation, and we find no reason for reading into the statute exceptions in favor of infants. This is a mere matter of procedure in trials of causes which involve no prejudice to the rights of infants by having the hearing in vacation before the chancellor if the counsel for both sides so agree.

The principal controversy arising on the present appeal relates to the decree of the court equalizing the differences between the values of the improved farm lands and compelling each of the parties to account in the final division of the estate for these differences in value. The contention of appellants is that the improved farm lands were devised to the widow in trust for the several *cestuis que trust,* regardless of value, and that the differences in value, if any, are not to be taken into account in the division of the other property. The contention of appellees is that the whole of the estate was devised in trust to be equally divided between the parties, and that in carrying out this trust the

differences in values of the separate specific tracts of
improved farm lands must be equalized and the payment
of owelty to be decreed in order to effectuate an equal
division of the property. It is claimed on each side of
the controversy that this question was adjudicated in the
original opinion of this court which became the law of
the case. Each side quotes statements from the opinion,
which they claim support their respective contentions.
The issues involved and the conclusions of this court are
clearly stated in the former opinion and show for them-
selves. There is nothing, we think, in the language of
that opinion itself which is decisive of the issue contro-
verted on the present appeal, but we think the effect of
the decision of the court upon the issues then involved
was an adjudication that the trust had been performed
in accordance with the terms, in so far as it related to
the improved farm lands and that the remainder of the
property was to be divided equally between the children
and grandchildren. Appellees, as plaintiffs below, did
not ask for an adjudication concerning those lands and
it is clear that they treated the trust as being finally ac-
complished with respect to that portion of the testator's
property, and the relief which they asked for was that
they be given an equal division in the remainder of the
property. This court merely decreed to them what they
asked for, and that necessarily resulted in establishing
as the law of the case the decision that the remainder
of the property was to be equally divided. Moreover,
that is, according to the preponderance of the testimony
in the case, what the testator intended in the creation of
the trust. He was unable to complete the division of the
property according to his wishes, but he selected one
character of property which stood in a class by itself
and divided that in accordance with his own wishes, and
apparently upon his own estimate of the respective
claims of his children and grandchildren upon his bounty.
There is no conflict in the testimony that he called over
the children name by name and specified the particular

farms which they were to have. He directed that his crops be sold by his executor and the proceeds equally divided between the children and grandchildren, and that each one be given a mule or a horse, and that the balance of his property be divided among the children and grandchildren, and repeated the saying in the presence of those assembled that they were to be treated alike—that "a child is a child," as he expressed it.

There was nothing to indicate that his intention was that there be an appraisement of the farm lands and that the differences in values, if any, should be equalized. In other words, it is clear that he intended to make the division himself as far as he was physically able to do so at that time, and that the remainder of the property was to be equally divided. We are of the opinion that the original counsel in the case misconceived the effect of the former decision of this court and put the wrong interpretation on it in holding that the parties were liable for the payment of owelty in the equalization of the values of the improved farm lands. The fact that counsel who originally represented the appellants consented, under a misconception of the law, to an instruction to the master to make a finding as to the relative values of the different tracts of improved farm lands does not bar appellants from objecting to the decree on that account. This direction was not given by way of a compromise settlement of the controversy, but, as before stated, was made under a belief entertained by counsel that such was the effect of the former decree. The parties, notwithstanding that concession, during the further progress of the proceedings had a right to object to the findings of the master and the decree of the court awarding the payment of owelty. No prejudice resulted from this concession during the progress of the proceedings, as the court could and should have corrected the misconception entertained at the time and rendered a decree in accordance with what we find now to be the law of the case. But it is contended now that this was settled against the contention of appellants by the decree en-

tered by the chancellor on April 7, 1919, and that the appeal from that decree was taken too late for this court to review the question. That decree, however, was not final. It merely declared the law with respect to the rights of the parties, but it did not award any particular property to any of the parties and left for future adjudication of the property to be awarded to the parties respectively. The case in that respect falls squarely within the rule announced by this court in *Sennett* v. *Walker*, 92 Ark. 607, and also within the rule announced in *Branstetter* v. *Branstetter*, 130 Ark. 301. There was no final decree concluding the rights of the parties without further judicial action until the decree of August 21, 1920, and the appeal was taken within six months after that time.

The widow, M. R. E. Stuart, who is one of the appellants, assigns as error the refusal of the court to allow her in the adjustment of the accounts the additional sum of $1,600 which she claims as her separate property in funds turned over to her in the lifetime of her husband in reimbursmeent for her inherited property which he had used for his own purposes. The chancellor found that these funds were regarded as the property of the testator himself, and as a part of the funds out of which he bequeathed to her the sum of $10,000, in lieu of all other claims, and that conclusion is supported by the evidence.

The contention is also made, on behalf of the widow, that the court erred in failing to decree to her, as her separate property, the funds deposited in bank in the joint names of herself and the testator, and which she now claims by right of survivorship. There was no exception to the report of the master as to this item, and the conclusion is warranted from the proof that these funds were the property of the testator.

An appeal has been prosecuted on behalf of the infant plaintiffs from that part of the decree fixing the amount of the fees of their counsel. The court, in fixing the amount of the fees, seems to have properly taken

into consideration the several amounts recovered by these infants under the decree, and, since the effect of our decision is to reduce the amounts recovered by them, it is proper to reverse this part of the decree so as to allow the chancellor to determine the proper amount of the fees based on the amount recovered.

The decree of the chancery court is therefore reversed and the cause remanded with directions, after ascertaining the amount of fees to be charged, to enter a decree in accordance with this opinion.

HART and SMITH, JJ., dissent.