LINOGRAPH COMPANY *v.* BOST.

Opinion delivered February 10, 1930.

*Hugh Basham,* for appellant.
*Paul McKennon,* for appellee.

MEHAFFY, J.  This is the second appeal in this case. The suit was originally brought in the Johnson Chancery Court to recover $2,149.50, the balance of the purchase money due on a typesetting machine, and to foreclose a chattel mortgage given to secure the debt.

S. H. Logan bought the property from the appellant, and executed the notes and mortgage upon which suit was brought.  Logan afterwards sold his business to Hunter and Bost, and Hunter and Bost purchased the typesetting machine from appellant, and assumed the payment of the unpaid notes given by Logan.

One of the defenses in that case was that appellant was a foreign corporation, and had not complied with the laws of this State permitting it to transact business in this State, and this contention was sustained by the chancery court; the complaint was dismissed for that reason, and appeal was prosecuted to this court. This court reversed the chancery court.  The only question decided by this court, however, was the question of whether the chancery court erred in dismissing appellant's complaint on the ground that it was a foreign corporation, and had not complied with the laws of this State permitting it to transact business in this State. This court held that the transaction was an act of interstate commerce, and that the judgment of the court below in holding to the contrary should be reversed, and the cause remanded.  The opinion in the case when it was here on appeal before is *Linograph Co.* v. *Logan,* 175 Ark. 194, 299 S. W. 609.

After the case was remanded it was again tried, the appellee defending on the ground that the machinery was defective, and would not work as guaranteed by appellant, and he denied that he owed appellant anything. The appellant undertook to prove that when Logan sold

out to Hunter and Bost, he sold the typesetting machine. Logan testified to this, but the other witnesses testified that Hunter and Bost bought the property from the appellant, and that Logan stated that he had nothing to sell. He had purchased it and only paid a small amount, and the appellant had retained title to the property and took notes and a mortgage.

The preponderance of the testimony shows that Hunter and Bost bought from the Linograph Company and agreed to execute notes for the purchase price, and that the representative came to Clarksville and sold the typesetting machine to them, and promised to put the machine in first-class condition, so that it would do the work. The representative went back to the home office, and they concluded that, instead of writing new notes, they would get Turner and Bost to assume the notes that Logan had given. Hunter and Bost signed a written obligation assuming to pay the notes that had been given by Logan. There was no written contract entered into between Hunter and Bost and the Linograph Company. They simply signed an obligation assuming the payment of the Logan notes.

The evidence shows that the agent of the Linograph Company came to see Bost and Turner a few days after they purchased the newspaper outfit from Logan; and after they took charge of the paper, and the agent of appellant with whom Hunter and Bost made the contract to purchase the machine promised to put the machine in good order, and guaranteed that it would do the work, and, because of these promises, they purchased the property and signed the obligation agreeing to pay the Logan notes. They had intended to buy a new machine.

The preponderance of the evidence shows that the machine was not only unsatisfactory, but so defective that it was impossible to use it; that they bought it on the guaranty made by the agent, and that they purchased from the agent because of the warranty, and this evidence was practically undisputed. There is some

conflict in the testimony as to the purchase of the machine by Hunter and Bost from Logan, Logan testifying that he sold it to them. But he could only have sold his interest in the contract, and the undisputed proof shows that they bought it of the Linograph Company and agreed to pay Logan's note, and the undisputed proof also shows that the agent of the Linograph Company warranted the machine. Bost paid the amount Logan was due the company at the time he, Bost, made the purchase, $400. When he found out he could not use the typesetting machine, he refused to pay any more, and suit was brought.

Appellant contends, first, that the case should not have been tried a second time in the lower court, because it says the pleadings have not been changed, although it is admitted that the appellee did not develop the proof fully as to the paragraph of its answer alleging the defects in the machine. And it is contended, because this court reversed and remanded the case, the lower court should have entered a decree for appellant. Appellant argues that in reversing the case this court simply said: "This cause is remanded to said chancery court for further proceedings to be had according to the principles of equity, and not inconsistent with this opinion." And he calls attention to a number of authorities sustaining his contention that when a case is reversed and remanded with directions no more proof can be taken.

Appellant is mistaken about this court reversing it and remanding it with directions for further proceedings to be had according to the principles of equity and not inconsistent with the opinon. The only question decided by this court was whether appellant was prevented from recovering, because it had not complied with the laws of Arkansas, and the court said:

"We conclude, therefore, that the transaction here under review was an act of interstate commerce, and

the judgment of the court below holding to the contrary will therefore be reversed and the cause remanded.''

So it will be seen from the opinion in that case that, while the pleadings originally contained in the issue as to the defective condition of the machine, and there was some proof on that, that question was not decided by the chancery court nor this court. The chancery court holding that the contract was unenforceable because of the failure of appellant to comply with the laws of Arkansas of course made it unnecessary to decide any other questions in the case. When the case was sent back to the chancery court, it was then proper to try the question that had not been settled by this court. If a case has been fully developed, and it is reversed and remanded with directions, the lower court, of course, simply complies with the directions of this court. But when it has not been fully developed, and there are other issues made by the pleadings that have not been determined either by the chancery court or this court, then it is proper for the court below to determine these issues after the case is remanded.

Appellant calls attention to and relies on the case of *Stevens* v. *Shull,* 179 Ark. 766, 19 S. W. (2d) 1018, and quotes as follows from the opinion in that case: ''In the last suit two additional grounds of attack upon the validity of the district were added. But these grounds might have been offered in the first two suits.'' That case involved the validity of an improvement district, and the court had passed on the validity of the district, and this was another attack on two additional grounds. And the court said: ''But these grounds might have been offered in the first two suits, and for that reason the plea of *res judicata* should be sustained. As pointed out in the cases referred to, if this were not true, litigation would not end until the parties had no more money or the ingenuity of counsel in suggesting additional grounds in support of the issue had been exhausted. Different landowners could prosecute different suits and make

different attacks on the validity of the district, so that it would be practically impossible to make any proposed improvement in a city within a reasonable time. Therefore we hold that the chancery court properly sustained the plea of *rēs judicata* in case No. 1173.''

The difference between that case and this is that there have been no additional grounds alleged in the answer in this case. The issues were made up by the original pleadings, and the ground now relied on by appellee was in the original answer. The court simply held that the contract was invalid, and did not consider or decide these other issues, and certainly it cannot be contended that an issue that has not been decided by any court is *res judicata,* where the failure to decide the issue was not the fault of the parties.

Where a case has been to the Supreme Court and been reversed, the law announced on the former appeal is the law of the case. Propositions of law once decided by an appellate court are not open to reconsideration in that court upon a subsequent appeal. Whatever was decided on the first appeal remains the law of the case for all further proceedings. *Morris & Co.* v. *Alexander & Co., ante* p. 735, 22 S. W. (2d) 558; *Fentris* v. *City National Bank,* 172 Ark. 711, 290 S. W. 58. However, the decision on former appeal is the law of the case as to so much of the case as was adjudicated. *Henry* v. *Irby,* 175 Ark. 614, 1 S. W. (2d) 49; *Chicago Mill & Lumber Co.* v. *Osceola Land Co.,* 94 Ark. 183, 126 S. W. 380.

The only question adjudicated in this case on former appeal was the right of appellant to maintain the suit. This question was settled on the former appeal, and cannot be reconsidered. The other issue raised by the pleadings was not adjudicated on former appeal, and is not *res judicata.*

It is next contended that there was no warranty because the instrument signed by Turner and Bost as-

1122

suming the indebtedness of Logan contains no warranty. The witnesses in behalf of appellee show that the agent came here from the company, made the representations and warranties to them, and that, because of these promises and warranties, they purchased the machinery, and agreed to assume and pay the notes of Logan.

Appellant quotes and relies on the case of *Lower* v. *Hickman*, 80 Ark. 505, 97 S. W. 681, quoting from the syllabus as follows: "A warranty is so clearly part of a sale that where the sale·is evidenced by a written instrument it is incompetent to engraft upon it a warranty proved by parol."

The instrument signed by Turner and Bost does not purport to be the contract of sale entered into, but simply a promise on their part to assume the notes which had been executed by Logan. The instrument does not undertake to do anything else, and does not even recite the sale.

Whether there was a warranty at the time of the sale to Hunter and Bost, and whether the machine was unfit for use, were both questions of fact, and we have repeatedly held that the finding of facts by a chancellor will not be set aside unless contrary to the preponderance of the evidence. The chancellor passed on these questions of fact, and he necessarily found that there was a warranty and a breach of the warranty.

We think that the finding of the chancellor is supported by a preponderance of the evidence, and the decree is therefore affirmed.