ST. LOUIS SOUTHWESTERN RAILWAY CO., ET AL V.
WARD JACKSON, ADM'R, ET AL

5-4664                                    438 S.W. 2d 41

Opinion Delivered March 3, 1969

*Audrey Strait* and *Barrett, Wheatley, Smith &
Deacon* for appellants.

*Gordan, Gordan & Eddy* for appellees.

CONLEY BYRD, Justice.    Following our reversal and
remand in *St. Louis Southwestern Railway Co.* v. *Jack-
son*, 242 Ark. 858, 416 S.W. 2d 273 (1967), this case was
retried with the same witnesses used before, plus addi-
tional witnesses for both sides.    The verdict in the
former case was for $69,188.90 and the verdict upon
which judgment was entered here is for $93,236.13. For
reversal appellants set forth two points as follows:

I.    There was absolutely no proof on negligence and
a verdict should have been directed for all defendants.

II.    The mental anguish award for the death of
grandchildren was erroneous.

Appellees' witnesses again testified about the motorists' obstructed view of southbound freight trains and the dimness of the signal lights. Witnesses Otha Hewitt and Larry Coulson again testified that motorists traveling west did not have a clear and unobstructed view of a southbound train until they got within 150 feet of the railroad track. Other witnesses testified that this distance could be as much as 200 feet. Appellees' witnesses again testified that the signal lights were dim and difficult to see. One witness said they were much dimmer than the railroad's interlocking signal where the Missouri Pacific tracks cross the Cotton Belt tracks. A new witness, Albert Hess, testified that the signal lights were not near as bright as the flashing light on the car of the policeman called to investigate the second accident.

The testimony with reference to the previous two accidents within the same two-week period under similar circumstances was again presented, together with the traffic count and the overall view of the area. In the previous appeal we held this testimony sufficient to make a jury issue on excessive speed and abnormally dangerous crossing. We find that decision to be controlling here as the law of the case.

On the first appeal appellants contended that the grandparents were not entitled to recover damages for mental anguish occasioned by the death of the grandchildren because Tommy Jackson lived some few moments after the death of his children and thus any cause of action for mental anguish died with Tommy Jackson. We there pointed out that there was evidence from which the jury could find that all parties died simultaneously. In holding that the matter was properly submitted to the jury we said,

> "It is true that when we had our mental anguish statute before us in *Peugh, supra,* we there limited recovery for mental anguish to 'heirs at law' of the decedent. However, where a whole

family is killed in a matter of moments, as is the situation here, the bench and bar should not expect a too literal interpretation of the words 'heirs at law' as the same are used in *Peugh*.   Act 255 of 1957, creating the right to recover for mental anguish, certainly did not intend that right to be so limited.''

Upon retrial the matter came upon the same pleadings and was presented to the court under identical evidence but this time appellants contended that the grandparents are not within the enumerated relatives permitted to assert a cause of action for mental anguish under Act 255 of 1957.   Under the doctrine of the law of the case, we hold that the trial court properly ruled against appellants on this issue.

We had before us an analagous situation in *Moore, Admx.* v. *Robertson*, 244 Ark. 837, 427 S.W. 2d 796 (1968) wherein we said:

''On cross appeal Robertson first contends that the trial court's decision in favor of his codefendants, on the merits, should inure to his benefit as well.   That contention is based upon a common-law rule that where one defendant answers and another defaults, a decision on the merits in favor of the answering defendant—upon a defense common to both defendants—operates as a release of the defaulting defendant.   *Burt* v. *Henderson*, 152 Ark. 547, 238 S.W. 626 (1922).

''The appellee's contention is not now available to him, because it could and should have been made on the first appeal.   The rule is that the decision on the first appeal is conclusive of any arguments that were or could have been made at that time.   *Storthz* v. *Fullerton, supra*.   The case at bar confirms the wisdom of the rule.   If the appellee's contention has merit—a point which we do

not decide—its assertion on the first appeal would have done away with the necessity for a second trial and a second appeal, with their attendant expenditure of time and money. Such waste can be effectively prevented only by a strict adherence to the principle that points not urged upon the first appeal are not available later on.''

We would be less than honest if we did not agree with appellant that the law of the case doctrine is a harsh rule, but when weighed on the scale of justice we find that the confusion and uncertainty which would result without use of the doctrine outweighs the harshness. In *Porter* v. *Hanley*, 10 Ark. 186 (1849) we had before us a case which after remand was retried upon substantially the same evidence. In applying the law of the case doctrine, we said:

''The counsel for the appellant has argued at some length, the main question decided by this Court upon the first appeal, and asks that we review that decision for the purpose of correcting what he assumes as error in the decision. We have duly considered this proposition (for the question is not raised by the assignment of errors) and inasmuch as the decisions of this Court have not been altogether uniform on this point, we will proceed to review them and determine whether, in the after adjudications of this Court upon the same case, its decisions can, under any circumstances, be modified or overruled. The cases of *The Real Estate Bank* v. *Rawdon et al.*, 5 Ark. 558. *Fortenbury* v. *Frazier et al.*, 5 Ark. 202 and *Walker & Faulkner* v. *Walker*, 2 Eng. 542 expressly decide that after the term has expired at which the decision is made, it is final and conclusive between the parties; that the Circuit Court is bound by the decision of this Court and must carry it into execution; that the inferior court cannot vary the decision, nor can it give further relief as to any matter decided, not

even when it is apparent that this Court has mistaken a material fact. In the case of *Fortenbury* v. *Frazier, et al.*, the court says 'After a case has been decided by the Supreme Court and remanded to the inferior Court and is again brought before the Supreme Court, nothing is before the Court for adjudication but the proceedings subsequent to the mandate.' In the case of *The Real Estate Bank* v. *Rawdon et al.*, 5 Ark. 558, upon a question as to whether the Court had power to reconsider its decisions at the close of the term at which they were made, although the Court were divided, a majority being of opinion that even though the motion is made at the same term, it must be decided also at that term or the judgment will be conclusive, still they were unanimously of the opinion, that where no motion for a reconsideration is interposed, the decisions at the close of its term, became final and conclusive upon the parties.

"In a more recent case, (*Rutherford, use*, &c. v. *Lafferty*, 2 Eng. 402,) this court seems to have departed from the rule laid down in these cases, whilst their authority is not questioned. On the contrary, it would seem that the court recognized the general principle, but based its decision upon the fact that the Supreme Court, in its former decision, had overlooked an important fact in the case. This was doubtless true; but then the question recurs, can the decision be held as conclusive between the parties and yet subject to correction and revision as to a misapprehension of facts? If for these, why not for errors as to the law also? We are at a loss for any satisfactory reason for the distinction, and are unwilling to concede that it should exist. It would not only authorize the appeal made to the court in this instance, but in all cases where the counsel, in their zeal for the success of their clients, might and doubtless would, where there was a hope of success, ask that the whole case be re-

viewed. The uncertainty and confusion which would result from such a practice, would strike vitally that progressive principle which lies at the foundation of all judicial proceedings so happily illustrated in the order and system of pleading and practice, which make each definite step in the progress of the cause conclusive upon the parties, and point them prospectively to an ultimate and final decision of the case. These rules of pleading have their origin in the same common principle alike applicable to the judgments of courts, where litigation ceases, and the judgment of each court is final and conclusive in the inferior courts unless set aside or reversed by an appellate tribunal; in the superior court, unconditionally so. If the propriety of this rule could need illustration, it is abundantly to be found in the case of *Rutherford, use, &c.* v. *Lafferty*. There the Supreme Court decided that the plaintiff had no right of action whatever in the matter in controversy, and reversed the decision of the Circuit Court. When the case returned to the Circuit Court, in obedience to the decision of this court it decided that the plaintiff had no right of action, and rendered judgment against him for costs. The plaintiff appealed to this court again, and this court reversed the decision of the Circuit Court which had been rendered on the mandate of this court, for the reason that this court had mistaken an important fact in the case. So that, in fact, there are two decisions on the point totally different. We think the cases of *Fortenbury* v. *Frazier et al.*, and the *R. E. Band* v. *Rawdon et al.*, well sustained, both upon authority and principle, and give them our full approbation.''

In *Floyd* v. *Miller Lumber Company*, 160 Ark. 17, 254 S.W. 450 (1923), the issue relative to the validity of the severance tax act came before us on the pleadings. In the trial court, the complaint alleged that the tax act was unconstitutional. The trial court overruled a

demurrer by Floyd, and when he elected to stand thereon, rendered judgment for the lumber company holding the act unconstitutional. On appeal we upheld the validity of the act and reversed. Upon remand, the Lumber Company amended its complaint to raise the issue that the tax act was not applicable to it. On the subsequent appeal, *Miller Lumber Company* v. *Floyd*, 169 Ark. 473, 275 S.W. 741 (1925), we held that the issue of applicability of the tax act to the Lumber Company had been foreclosed by the law of the case doctrine. In so doing, we said:

"Having reached the conclusion that the tax levied by the statute was a tax on business and not on property, four members of this court for different reasons united in a decision that the tax was an occupation tax and not a property tax, and therefore was not in violation of the provision of the Constitution above quoted. Whether this decision was right or wrong, it is the law of the case; it is *res judicata.* The rule has been long established in this State and uniformly adhered to that in the same cause this court will not reverse nor revise its former decisions., *Fortenberry* v. *Frazier,* 5 Ark. 200; *Porter* v. *Doe,* 10 Ark. 186; *Taliaferro* v. *Barnett,* 47 Ark. 359; *Vogel* v. *Little Rock,* 55 Ark. 609; *United States Annuity & Life Ins. Co.* v. *Peak,* 129 Ark. 43; *Danaher* v. *S. W. Tel. & Tel. Co.,* 137 Ark. 324; *Ft Smith Lbr. Co.* v. *State of Arkansas,* 138 Ark. 581; *Stuart* v. *Barron,* 148 Ark. 380; *Mo. Pac. Rd. Co.* v. *Walnut Ridge-Alicia Road Imp. Dist.,* 160 Ark. 297; *St. L. S. F. R. Co.* v. *Kirkpatrick,* 162 Ark. 65, and numerous other cases cited under the head of Appeal and Error in 1 Crawford's Digest, §§ 405 and 5 Crawford's Digest, § 405. This general rule is grounded on public policy, experience, and reason. If all questions that have been determined by this court are to be regarded as still open for discussion and revision in the same cause, there would be no end of

their litigation until the financial ability of the parties and ingenuity of their counsel had been exhausted. A rule that has been so long established and acted upon and that is so important to the practical administration of justice in the courts should be followed and not departed from.''

This doctrine is neither new or antiquated, but has constantly lived with this court through its many applications. At this time, we are unwilling to overrule the many precedents wherein it has been applied. For this reason the judgment is affirmed.

GEORGE ROSE SMITH, J., concurs; BROWN & FOGLE-MAN, JJ., dissent.

GEORGE ROSE SMITH, Justice, concurring. I join in the majority opinion, but I think it appropriate to add a few words of separate concurrence to call attention to an assumption made in the dissenting opinion which I think to involve a misconception of the practice that we follow in remanding a case for a new trial.

The keystone of the minority opinion in this case is the assertion that the appellant should escape the rule of the law of the case because counsel could not have successfully urged their present contention on the first appeal. This is the pivotal language in the dissenting opinion:

I would agree that when the record was such that the party against whom the rule [of the law

of the case] is invoked could have argued the point on the first appeal, he should be foreclosed from arguing it on a second appeal. But that is not the case here. Appellants could not have argued the point on their first appeal. We would have rejected their argument had they done so, because the question would have been raised for the first time on appeal.

When we are *affirming* a case we customarily reject arguments that are vulnerable to technical procedural defects, such as a failure to make the proper objection in the trial court, a failure to include in the motion for a new trial an objection in a criminal case, a failure by the trial judge to give a requested instruction that was imperfectly drawn, a failure to save an exception in a criminal case, and a host of other procedural defects that must ordinarily be given effect in the orderly conduct of litigation.

When, however, we have *already* found reversible error and are *remanding* the case for a new trial, the situation is wholly different — quite as much so as night from day. It is then our practice — and rightly so — to consider on its merits any contention that may arise again when the case is retried, regardless of procedural defects that would otherwise compel us to reject the contention. The only requirement is that the point be brought to our attention in the briefs (which was not done on the first appeal in *Mode* v. *State,* relied upon by the minority opinion in the case at bar).

Our practice in this respect is so well settled that examples could be found in any volume of our Reports published during the past quarter century or so. I will cite only our unanimous opinion in *Arkansas State Highway Commn.* v. *Ark. Real Estate Co.,* 243 Ark. 738, 421 S.W. 2d 882 (1967), because there we considered on the merit not one but two contentions that were procedurally defective. One, we held that upon a new

trial the appellant would be entitled to a certain instruction, even though the one offered at the first trial was properly rejected because it was imperfectly drawn. Two, we pointed out that one of the appellant's contentions might be unsound upon a second trial, even though we could not tell from the appellant's abstract on the first appeal whether the trial court had erred at the original trial.

Our practice is demonstrably right. It involves no unfairness either to the trial court or to the losing party, because the case is going back for a new trial in any event. Hence what we try to do is to prevent still a third trial as a result of some error that is called to our attention upon the first appeal. The view of the dissenting opinion, on the other hand, would encourage such unnecessary third trials by requiring us to reject, on procedural grounds, contentions that ought to be disposed of on their merits upon the first appeal.

Indeed, the present case illustrates my point. The minority opinion is in error, I think, in its concluding observation: "In this case it should be less difficult to recognize the error urged by appellants because we would not be faced with the bugaboo of a third trial. We simply could reduce the judgment by the amount of the award for mental anguish."

Here the bugaboo is not that of a *third* trial; it is that of a *second* trial, as far as the point now at issue is concerned. On the first appeal the railroad company argued, though for the wrong reason, that the grandparents were not entitled to recover for mental anguish. The company could and should have presented its present argument at that time. In that way even a second trial upon the extent of the grandparents' mental anguish (which is a question of fact under *Peugh* v. *Oliger*, 233 Ark. 281, 345 S.W. 2d 610 [1961]) would have been avoided. Thus the damage has already been done, and it is only by adhering to the doctrine of the law of the case that we can effectively prevent such

wasteful and unnecessary retrials in the future.

John A. Fogleman, Justice.   I concur in all of the court's application of the "law of the case" except as to that portion relating to the mental anguish award to grandparents.   I do not think that the doctrine has any application to this part of the judgment of the court below.   While the rule is a necessary and salutary one, its recognized harshness should not be extended beyond those situations in which it is necessary, particularly to reach a patently erroneous result, as is the case here. I have been unable to find any case where this court has made the doctrine applicable to a situation of this sort.

In order to illustrate, it is necessary to review the record of this and the previous proceeding.   At the time of the first trial, the circuit judge gave instructions permitting recovery by grandparents for mental anguish. The reason given for the objection by appellants to the instructions was that the proof showed that the children were survived by their father and that the claim for mental anguish died with him, extinguishing itself, and did not then pass on to the grandparents.   The point relied on by appellants on the first appeal is stated in the opinion.   See *St. Louis Southwestern Railway Co. Et Al* v. *Ward Jackson, Adm'r Et Al*, 242 Ark. 858, 416 S.W. 2d 273, 283.   The point was argued on the basis that the right to recover for mental anguish was vested in the father and that the undisputed evidence showed that he survived the two children by from one to fifteen minutes.

We disagreed with the appellants on this point but solely on the ground that there was testimony from which the jury could find that all occupants of the automobile were killed instantly.   In covering the point, we said:

> "It is true that when we had our **mental** anguish statute before us in *Peugh, supra,* we there limited recovery for mental anguish to 'heirs at law'

of the decedent. However, where a whole family is killed in a matter of moments, as is the situation here, the bench and bar should not expect a too literal interpretation of the words 'heirs at law' as the same are used in *Peugh*. Act 255 of 1957, creating the right to recover for mental anguish, certainly did not intend that right to be so limited."

This point was not treated any further. Its determination was not necessary to a decision of the case. We reversed for error of the trial court in admitting expert testimony as to the abnormally dangerous condition of the railroad crossing and for admission of certain special instructions given by appellants to their employees. Our opinion directed a new trial.

I do not think that the doctrine of the law of the case should be applied because the present issue is not one which was decided on the previous appeal and the decision made on the previous appeal was not necessary to the disposition of the case. When the instructions concerning the grandparents' right to recover for mental anguish were presented on the new trial, appellants did not attempt to again raise the question which was decided by this court. It simply objected on the basis that grandparents had no right to recover mental anguish for the death of grandchildren under our statute because they are not within any permissible class of relationship.

The application of the rule made by the majority would mean that every litigant will have to make every possible objection to any step in the trial which he considers erroneous, even when the trial court may rule favorably on the first objection he makes. This would mean that one who had objected to testimony on the basis that it was irrelevant could not object to it on the basis that it was hearsay in a new trial granted upon reversal of the trial court because of its erroneous ruling on that point in the first trial. I cannot find

280

any case where such an extreme application of the rule has been made. The majority has cited no such case in its opinion. The cases it did cite are distinguishable.

In *Moore, Adm'x* v. *Robertson,* 244 Ark. 837, 427 S.W. 2d 796, we clearly said that since the contention in question could and should have been made on the first appeal, it was barred. I would agree that when the record was such that the party against whom the rule is invoked could have argued the point on the first appeal, he should be foreclosed from arguing it on a second appeal. But that is not the case here. Appellants could not have argued the point on their first appeal. We would have rejected their argument had they done so, because the question would have been raised for the first time on appeal.

In *Storthz* v. *Fullerton,* 185 Ark. 634, 48 S.W. 2d 560, this court remanded an equity case to the chancery court with directions to enter a decree and for further proceedings to enforce a vendor's lien for the benefit of Fullerton. See *Fullerton* v. *Storthz,* 182 Ark. 751, 33 S.W. 2d 714. On remand, Storthz filed a new pleading in which he sought to reach the lien note in Fullerton's hands by equitable garnishment. The court referred to the "law of the case," but actually applied res judicata. It is clear, however, that the contentions made there could have been made on the former appeal. In this case the direction was to grant a new trial, not to enter a judgment. Storthz was endeavoring to have the court determine whether the judgment directed by this court be entered and carried into effect. Appellants are not seeking to do this. Furthermore, appellants could not have argued the objection now urged on the former appeal.

In *Miller Lumber Co.* v. *Floyd,* 169 Ark. 473, 275 S.W. 741, the appellees had filed a demurrer, which was overruled and final chancery decree was entered against them. The judgment was reversed and the

cause remanded for proceedings not inconsistent with the opinion. The only question involved the constitutionality of the Severance Tax Act. On remand, appellees in the first case amended the complaint raising issues as to the construction and application of the act. The trial court sustained a demurrer to the amended complaint and again entered final decree. From this decree, the second appeal was taken. Appellants again argued that the act was unconstitutional. On the first appeal, the decision was based upon a holding that the tax was an occupation tax not a property tax. On the second appeal the contentions of Miller Lumber Company were such that it would have been necessary for the court to say that the tax was on property rather than on the occupation. We properly applied the "law of the case" doctrine because to do otherwise would have required a reversal of the holding that the tax was not a property tax.

Although the doctrine has been applied in Arkansas with reference to instructions given on the first trial, none of the cases indicate that it has application where the objection made on the second trial was not the same as that made on the first trial.

In *Friedman* v. *Cornish*, 99 Ark. 648, 139 S.W. 543, we recited that all the instructions on the former trial were repeated on the second trial except for an erroneous instruction, in lieu of which an instruction in accordance with the opinion of the court on prior appeal was given. The points raised on the second appeal are not stated. The court only said that the instructions approved on the former appeal or not disapproved were the law of the case and the instructions, as given, fairly submitted the cause to the jury.

In *St. Louis, I. M. & S. Ry. Co.* v. *Gibson*, 113 Ark. 417, 168 S.W. 1129, we only said that it was sufficient answer to unspecified assignments of error to the giving of instructions to say that the instructions given on the second trial were in conformity with the rules of law laid down in the opinion on the first appeal.

In *Scott* v. *Cleveland*, 122 Ark. 259, 183 S.W. 197, it was held that the opinion on a former appeal did not settle the law of the case as to certain instructions. The former opinion had stated that the only error committed by the trial court was in refusing to grant a continuance. The instructions in question were refused, but it does not appear that these two instructions were asked and refused on the former trial, and they were not discussed in the first opinion. The court reversed for failure to give the instructions.

In *McCombs* v. *Moss*, 131 Ark. 509, 199 S.W. 545, we held that instructions on the second trial conforming to the rules of this court on appeal from the judgment on the first trial are deemed correct on second appeal. The case was reversed on the first appeal for failure to give an instruction. See *McCombs* v. *Moss*, 121 Ark. 533, 181 S.W. 907.

In *Missouri Pacific Railroad Co.* v. *Foreman*, 196 Ark. 636, 119 S. W. 2d 747, the court stated that instructions given on the first trial were not subject to review on the second appeal, since they were approved by the holding that there was no error in the record of the first trial except in the argument of one of the attorneys. The first opinion (194 Ark. 490, 107 S.W. 2d 546) specifically stated that the usual questions arising in such cases were present and discussed in the briefs but that no error was found except in the particulars stated therein.

In *Thacker* v. *Hicks*, 215 Ark. 898, 224 S.W. 2d 1, the principal objection to the instructions was that there was no competent evidence to support the giving thereof. We said that the holding on the first appeal, that there was no error in the refusing or giving of instructions, was binding as the law of the case insofar as these instructions were concerned.

The only question decided on the first appeal in this case was that there was a fact question as to whether

the father of the minors survived them. The instruction given was not mentioned, nor was anything said about the right of grandparents to recover for mental anguish. It was not necessary to the decision of the case to do so. The former opinion has become binding as the law of the case to the extent that the *questions* there involved were decided. *Baker* v. *State*, 201 Ark. 652, 147 S.W. 2d 17. See also *St. Louis, I. M. S. Ry. Co.* v. *DeLambert*, 120 Ark. 61, 178 S.W. 926. In *St. Louis & S. F. R. Co.* v. *Conarty*, 124 Ark. 454, 188 S.W. 310, we quoted with approval a statement by the United States Supreme Court that the rule does not apply to expressions of opinion on matters the disposition of which was not required for the decision. We also said:

"Whatever was before the court and disposed of is considered as finally settled, but the inferior court, upon the case being remanded, is justified in considering and deciding any question left open by the mandate and opinion, and may consult the opinion to ascertain exactly what was decided and settled. * * * "

While our opinions have stated that the law of the case applied to all questions which were raised, or might have been raised on the first appeal, I find none that extend the principle to those which might have been raised in the trial court but not in this court. Obviously, any question raised on appeal that was not raised in the trial court would not be entertained by this court. We have refused to consider such questions in many cases where a new trial was or should have been anticipated. *Holland* v. *Ratliff*, 238, Ark. 819, 384 S.W. 2d 950; *Ransom* v. *Weisharr*, 236 Ark. 898, 370 S.W. 2d 598; *Industrial Farm Home Gas Co.* v. *McDonald*, 234 Ark. 744, 355 S.W. 2d 174; *Lee Rubber & Tire Corporation* v. *Camfield*, 233 Ark. 543, 345 S.W. 2d 931; *Robinson* v. *Martin*, 231 Ark. 43, 328 S.W. 2d 260; *Missouri Pac. R. Co.* v. *Gilbert*, 206 Ark. 683, 178 S.W. 2d 73.

In order to say that an objection not raised in the trial court on the the first trial cannot be raised on the second trial, we must disregard the effect of the remand of a case for a new trial on reversal. When we do this, the slate is wiped clean, as if there had never been any trial. The case stands in the attitude it was just prior to going into trial. *Heard* v. *Ewan,* 73 Ark. 513, 85 S.W. 240. In *Hartford Fire Ins. Co.* v. *Enoch,* 79 Ark. 475, 96 S.W. 393, we said:

" * * * When, on appeal or writ of error, a cause is reversed and remanded for new trial, the case stands as if no action had been taken by the lower court. *Harrison* v. *Trader,* 29 Ark. 85; Heard v. Ewan, 73 Ark. 513, 85 S.W. 240. If the facts developed on second trial remain the same as they were on the first trial, the lower court *must be governed,* in applying the law to the facts, *by the principle announced by this court in that case as controlling.* * * * " [Emphasis mine.]

No better statement of the principle involved could be made than was contained in *Palmer* v. *Carden,* 239 Ark. 336, 389 S.W. 2d 428, where we said:

" * * * This court reversed the trial court judgment in that case, and remanded the cause, and we have said, on numerous occasions, that, when a judgment is reversed and remanded for new trial, the case stands as if no action at all had been taken by the trial court. This was first stated as far back as 1874 in the case of Harrison v. Trader and Wife, 29 Ark. 85. In that case, we quoted language from the case of Simmons v. Price, 18 Alabama 405, as follows:

'When a judgment is reversed, the rights of the parties are immediately restored to the same condition in which they were before its rendition; and the judgment is said to be mere waste paper.'

Since that time, we have had occasion to reiterate this statement many times. See Hartford Fire Ins. Co. v. *Enoch,* 79 Ark. 475, 96 S.W. 393; Holt v. Gregory et al., 222 Ark. 610, 260 S.W. 2d 459. * * * ."

See also *Clark v. Ark. Democrat Co.,* 242 Ark. 133, 413 S.W. 2d 629, Supplemental Opinion, 242 Ark. 497, 413 S.W. 2d 633; *Morgan Engineering Co. v. Cache R. Drain. Dist.,* 122 Ark. 491, 184 S.W. 57.

Not only did our opinion specifically remand the case for a new trial, but the mandate directed "further proceedings not inconsistent with the opinion herein." The result reached by the majority would probably be proper if the case had not been remanded for new trial. The rule followed in the majority opinion would be applicable as to any issues if the mandate had given instructions to render a judgment in accordance with the opinion on first appeal. See *Hollingsworth* v. *McAndrew,* 79 Ark. 185, 95 S.W. 485; *Hill* v. *Draper,* 63 Ark. 141, 37 S.W. 574; *Prewitt v. Waterworks Improvement Dist. No. 1,* 176 Ark. 1166, 5 S.W. 2d 735. The same result has been reached as to new issues where the directions to the circuit court were to affirm the judgment of a county board of education. *Milsap* v. *Holland,* 184 Ark. 996, 44 S.W. 2d 662. The correct result was reached as to new issues in *Shackleford* v. *Arkansas Baptist College,* 183 Ark. 404, 36 S.W. 2d 78, because we affirmed the judgment of the trial court, as modified, on first appeal. See 181 Ark. 363, 26 S.W. 2d 124. While the rule is called "law of the case" there, the doctrine of res judicata was actually applicable.

It is only the *law* specifically declared on the first appeal that must be followed. In *Linograph Co.* v. *Bost,* 180 Ark. 1116, 24 S.W. 2d 321, we said:

"Where a case has been to the Supreme Court and been reversed, the law announced on the former appeal is the law of the case. Propositions of law

once decided by an appellate court are not open to reconsideration in that court upon a subsequent appeal. Whatever was decided on the first appeal remains the law of the case for all further proceedings. *Morris & Co.* v. *Alexander & Co.,* 180 Ark. 735, 22 S.W. (2d) 558; *Fentres* v. *City National Bank,* 172 Ark. 711, 290 S.W. 58. However, the decision on former appeal is the law of the case as to so much of the case as was adjudicated. *Henry* v. *Irby,* 175 Ark. 614, 1 S.W. (2d) 49; *Chicago Mill & Lumber Co.* v. *Osceolo Land Co.,* 94 Ark. 183, 126 S.W. 380.

The only question adjudicated in this case on former appeal was the right of appellant to maintain the suit. This question was settled on the former appeal and cannot be reconsidered. The other issue raised by the pleadings was not adjudicated on former appeal and is not res adjudicata.''

We have previously permitted new issues to be raised on a retrial after reversal and remand. For instance, in *American Surety Co. of N. Y.* v. *Kinnear Manufacturing Co.,* 185 Ark. 959, 50 S.W. 2d 586, this court refused to apply the ''law of the case'' from a previous appeal. Upon remand the complaint was amended to allege that an architect was guilty of such inattention and indifference as to imply bad faith. This issue was then submitted to the jury under instructions correctly declaring the law on that subject. On the previous appeal, the court had held an instruction touching upon this issue to be correct. The reversal was for failure to give that instruction. Thus, one of the parties was permitted, upon retrial, to raise a new issue. In effect, this is what is being done here.

In *Morgan Engineering Co.* v. *Cache R. Drain. Dist.,* supra, the court refused to apply the doctrine. The appellant contended that the circuit court on trial after remand, was foreclosed from inquiring into the validity

of a contract. It asserted that the language of the opinion on the former appeal was an adjudication of the binding effect of the contract and that the trial court and the parties were bound under the law of the case. The reversal on the former appeal was based upon the failure of the trial court to take proof of the value of services rendered under the contract and to find for appellant for that amount. On retrial, an issue was made as to the validity of the appellee district and, incidentally, the validity of the contract. In referring to authorities cited by appellant, we said that those decisions simply announced and adhered to the rule that where an issue has been *raised in the court below* and has been finally adjudicated on appeal to the Supreme Court the same issue cannot be reopened on another trial. We said that a remand for further proceedings in accordance with the opinion was in effect a remand for a new trial in general, which contemplated that there was to be a new trial on the *issues that might be presented.* The language used there is particularly significant here:

> "Now, on the first trial the appellees (Interveners) did not challenge the validity of the drainage district, and they introduced no evidence to show that the district was invalid. Their contention was that under the act abolishing the district the appellant should be allowed to recover only such compensation as the jury might find reasonable. They did not directly call in issue appellant's contract, but only claim that it was not entitled to recover under it. On the last trial the issues were entirely changed. By permission of the court the appellees were permitted to put forth an entirely new defense to appellant's claim, and to set up that, the district being void for uncertainty, the directors had no authority to enter into a contract with appellant, and that therefore such contract was void, and that appellant was not liable at all, and they introduced evidence to su-

stain their contention. Thus the issues and the facts on the last trial were entirely different from what they were on the former appeal, and hence what was said by us in the former opinion as to the contract and its binding effect would not be the law applicable to the changed issues and facts as discovered by this record.''

This court has actually followed and applied the principle I would follow in *Mode* v. *State*, 234 Ark. 46, 350 S.W. 2d 675. The rule of law of the case was applied in this second appeal from a conviction of murder. On the second appeal, the admission of testimony relating to the good character of the deceased was asserted as error. The court decided the question of admissibility, saying:

"This assignment cannot be disposed of by the rule of 'law of the case' because, in the first tri._, there was no objection to testimony of the good character of the deceased.''

If by making no objection to the admissibility of testimony, a party is not later barred from objecting, I can perceive of no reason why he should not be permitted to make a different objection on a second trial. In order to say that a different objection cannot be made on a second trial, we must necessarily apply the doctrine of waiver, which would be just as applicable in a case where a party made no objection. If the principle followed in *Mode* v. *State* were applied to jury instructions, then a party who had made no objection to a jury instruction on a first trial could object on a trial after reversal and remand. I can see no logic in permitting this and not permitting a party to make a different objection on the second trial.

In this case it should be less difficult to recognize the error urged by appellants because we would not be faced with the bugaboo of a third trial. We simply could reduce the judgment by the amount of the award

for mental anguish. The jury awarded $24,000 to each set of grandparents. We could correct the error by reducing the judgment in the amount of $48,000.

BROWN, J., joins in this dissent.