Stanley DICKSON et al *v.* E. G. RENFRO et al

81-200                                             634 S.W.2d 104

Supreme Court of Arkansas
Opinion delivered May 24, 1982
[Rehearing denied June 28, 1982.]

*Keith, Clegg & Eckert,* for appellants.

*Woodward, Kinard & Epley, Ltd.,* and *Robert R. Wright,* for appellees.

STEPHEN P. SAWYER, Special Justice. This is the second appeal involving the within case, the first being *Dickson* v. *Renfro,* 263 Ark. 718, 569 S.W.2d 66 (1978). The facts are set out in some detail in that opinion, but may be summarized as follows:

The action involves the claim of the six appellants to an undivided two-thirds interest in a seventy-six acre tract of land in Columbia County on which a producing oil and gas well was completed in the year 1976. The action was brought in the same year by the appellants to protect their interest in royalties derived from the well. The royalties are being held by the clerk of the lower court pending the outcome of this litigation.

The appellants are the children of Carrie Dickson and Omie Lecroy, both deceased. They derive their interest for the subject property from a 1920 Warranty Deed in which Carrie Dickson and Omie Lecroy conveyed their interest to Guy Lecroy, their brother, and his wife Mattie. The deed contained the following language in the granting clause:

"... do hereby grant, bargain, sell and convey unto the said Gus Lecroy and Mattie Lecroy, and unto their

heirs and assigns, forever, if Gus and Mattie have no heirs then to the heirs of Carrie Dickson and Omie Lecroy, the following lands . . . "

The appellees, in the main, derive their interest from Gus and Mattie Lecroy. Gus died in 1971, and Mattie died in 1979, after the first appeal.

The Chancellor did not construe the 1920 deed in this original decision because he found the appellants' claim to be barred by a 1920 foreclosure suit and by limitations and laches. On the first appeal, this court in a four to three decision, held that the purchase of this property by Gus Lecroy within ten months after one W. S. McKissack, the mortgagee in the 1928 action, obtained a commissioner's deed to it amounted to a redemption in favor of his sisters and their "heirs" and, in effect, erased the foreclosure, leaving the parties in their original position. This court then went on to construe the 1920 deed stating that the word "heirs" plainly meant children. Gus and Mattie had no children, although Mattie curiously adopted one of the appellees after the filing of the appellants' complaint. This court held that the adopted daughter who was an adult did not qualify as an "heir" within the intent of the 1920 deed. The court did not determine whether or not the appellants' estate was a contingent remainder or an executory interest but specifically stated that it did not become a possessory estate until at Gus's death in 1972, if not until Mattie's.

Since the original action was presented on motions for summary judgment filed by both sides, the court remanded the matter for further proceedings in the following language:

"The defendant's motion for summary judgment asserts no facts suggesting that any basis for a finding of limitations or laches arose after Gus's death in 1972. That question therefore remains open, for the appellants are mistaken in arguing that when both sides file motions for summary judgment they impliedly agree that there is no issue of fact in the case. *Wood* v. *Lathrop,* 249 Ark. 376, 459 S.W.2d 808 (1970). This

opinion merely disposes of issues of law raised by the trial court's action in granting defendant's motion for summary judgment. The court expresses no opinion upon issues of fact that may be raised by either party at a trial on the merits."

After remand and trial, the chancellor reconstrued the 1920 deed holding that it conveyed a determinable fee to Gus and Mattie Lecroy as tenants by the entirety with a possibility of reverter as opposed to a remainder or executory interest and further held, in a letter opinion, that the holders of a possibility of reverter have a cause of action when it becomes reasonably probable that their interest will become possessory. The court then held that the statute of limitation began to run in 1963 or 1964 when Gus and Mattie conveyed the property to third parties, when Gus and Mattie were seventy (70) years of age or older and had no children, and thus appellants' claim was barred by adverse possession and laches. Accordingly, all oil royalties were awarded to appellees.

On this appeal, the appellants contend that the issues decided by the chancellor were treated in this court's original opinion and the doctrine of "law of the case" applies. In this regard, the chancellor, after remand, made a finding that only two matters previously decided by this court constituted "law of the case", to-wit:

(1) When Gus Lecroy purchased from McKissack his purchase amounted to a redemption.

(2) In the 1920 deed, the words "heirs" in the phrase; "if Gus and Mattie have no heirs" means children.

It is the position of this court that the issue of the construction of deed was decided in the previous appeal and that the doctrine of law of the case applies. See *St. Louis Southwestern Railway Co.* v. *Jackson,* 246 Ark. 268, 438 S.W.2d 41 (1969). As indicated above, we previously held that any interest of Carrie and Omie did not become a possessory estate until Gus's death, if not until Mattie's. Even if the interest of appellants was only a possibility of

reverter, appellees cite no case, nor did the chancellor, which would indicate that they would have a cause of action for possession when it became "reasonably probable that their interest would become possessory". To the contrary, it has been held that the holder of possibility of reverter after a determinable fee has no estate in the property. See 28 Am. Jur. 2d, Estates, Sec. 27. It has been held that the holders of the possibility of reverter have no such present estate or ownership as would entitle them to protect their rights by proceeding under a statute dealing with situations where title and ownership of land are so uncertain as to render them defective and preclude sale or lease. See 28 Am. Jur. 2d, Estates, Sec. 185.

In any event, this court holds that the appellants here would have no possessory right and could not have asserted any cause of action for possession until at least the year 1972, when Gus died.

The appellees, on remand, called numerous witnesses and introduced various conveyances by Gus and Mattie and their successors in title since 1929. The chancellor held that Gus executed many acts of absolute ownership of the property, which were adverse to his sisters' interest, for more than thirty years and that Carrie and Omie had at least constructive notice of these acts. The chancellor noted that Gus conveyed, by warranty deed, forty acres to the Eldridges in 1963 and thirty six acres to the Renfros in 1964, and, as previously stated, held that the statute of limitations began to run as of the date of these deeds. However, because of the foregoing decision, these facts become irrelevant because the statute of limitations could not begin to run until Gus's death in 1972. This action was originally filed in 1976, long before the running of the statute of limitations which would bring into play the doctrine of adverse possession. In addition, there is nothing in the record that would indicate any of the appellants were guilty of any actions which could be construed as laches since Gus's death, there being no change in the parties' status after that time. Accordingly, the decision of the chancellor is herein overruled with the instruction to reinstate the interest of the appellants in the

land herein involved as heirs of Carrie Dickson and Omie Lecroy.

There remains the question of disposition of the oil royalties being held in this matter.

The appellants argue that if their estate became possessory in 1972 when Gus Lecroy died then there is no question that they are entitled to all of the royalties from the oil production, which began in June, 1976. They contend that it is only if they were not entitled to possession until Mattie's death in 1979 that the issue comes into question. They point out that the courts have held that an owner of a life estate is entitled to only the income from the royalties themselves, the royalties being a substituted corpus which must be preserved for the owner of the future interest until it comes possessory.

Appellees, on the other hand, argue that the estate, if any, of the appellants' is that of an executory limitation after a determinable fee, citing Williams and Meyers *Oil and Gas Law*, Vol. 2, Sec. 515 in which it is stated that the owner of a defeasible fee interest may develop or lease land without joinder of the owner of any subsequent interest and without the necessity of an accounting.

Appellees counter with the argument that the court, in its previous appeal, held that it did not need to determine whether appellees' estate is a contingent remainder or executory interest, for in either case it did not become a possessory estate at least until Gus's death, if not Mattie's. The appellees also argue that it is irrelevant whether appellees' estate is characterized as a contingent remainder, executory interest or an executory limitation for, in any event, there is an inherent duty not to commit waste.

In the previous appeal, this court held that the "heirs" in the limitation in the involved deed meant the children of Gus and Mattie. Accordingly, it is this court's view that upon the death of Gus in 1972, the estate terminated, and appellants' interest became possessory. Under this view, it is

obvious that appellants are entitled to the entire royalty interest.

Even if we held that the estate did not become possessory until Mattie's death in 1979, it is our opinion that she had a duty not to commit waste, particularly under the circumstances presented in this case, where the appellees were aware at the time of the beginning of the production that Gus had died, and the owner of the present estate, Mattie, had no possible right to destroy the appellants' future interest in this property by having children with Gus. See, for example, 28 Am. Jur. 2d, Estates, Sec. 372 and Restatement, Property, Sec. 193.

Accordingly, it is this court's position that regardless of how appellants' interest is characterized, they would be entitled to all of the royalties produced.

This case is reversed and remanded with directions to enter an order consistent with the decision herein.

Reversed and remanded.

HOLT, J., not participating.